[No. 13795.   Department Two.   June 4, 1917.]

J. T. WORKMAN, *Respondent*, v. ROYAL EXCHANGE
ASSURANCE, *Appellant*.[1]

INSURANCE—MISREPRESENTATIONS — OTHER INSURANCE — INTENT TO DECEIVE—STATUTES.  Representations by assured that there had been another policy upon the property, which policy had been left with one C., and that he did not know whether it was in force or not, will not avoid a policy of fire insurance containing a provision that it shall be void in case of any other insurance on the property, in view of Rem. Code, § 6059-34, providing that no misrepresentations or warranties made in a negotiation of insurance shall be deemed material or avoid the policy unless such representation is made with intent to deceive; since the representations were not made with intent to deceive and did not contribute to the loss, and it was the duty of the agents to ascertain whether the other insurance was in force.

INSURANCE—FIRE INSURANCE — POLICY — BREACH OF CONDITIONS— OTHER INSURANCE.  Notwithstanding Rem. Code, § 6059-106, requiring all fire insurance policies to be issued on the New York standard form, and Id., § 6059-191, making it a penal offense to use any other form, there may be an oral waiver of the standard form provision to the effect that the policy shall be void in case of other insurance; in view of 3 Rem. & Bal. Code, § 6059-34, which provides that no oral or written misrepresentation or warranties made in the negotiation shall be deemed material or avoid the policy unless made with intent to deceive nor unless the breach existed at the time of the loss and contributed thereto.

INSURANCE—POLICY—CONDITIONS—WAIVER.  A provision in a fire insurance policy, prohibiting other insurance, is waived where the agents were notified that there had been other insurance, and wrote the policy and accepted the premiums without ascertaining whether the prior insurance was in force; since their knowledge must be imputed to the insurance company.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered April 8, 1916, upon findings in favor of the plaintiff, in an action on a fire insurance policy, tried to the court.   Affirmed.

*H. T. Granger*, for appellant.

*Dysart & Ellsbury* and *C. D. Cunningham*, for respondent.

[1] Reported in 165 Pac. 488.

Holcomb, J.—In this action respondent demanded and recovered judgment upon a fire insurance policy issued by appellant to the respondent on or about July 9, 1915, insuring the respondent, subject to the terms and conditions of the policy, against loss by fire on a certain one and one-half story frame dwellinghouse situated in the town of Littell, Lewis county, Washington. The policy is for $700, and the complaint shows payment by the respondent of $8.40 as premium; alleges that the dwelling was destroyed by fire on August 21, 1915; and demands judgment for the amount of the policy.

Appellant answered and, so far as needs be considered on this appeal, set out two affirmative defenses in substance as follows:

(1)    That the policy sued upon provides that it shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, and that, at the time the policy of insurance sued upon was written, the insured represented to the appellant that he had no other insurance upon the property, when in truth and in fact at that time he did have other insurance in the Fireman's Fund Insurance Company in the sum of $800, all of which was unknown to appellant, and had appellant known that there was such other insurance, the policy sued upon would not have been issued; that appellant learned for the first time after the fire of the existence of the Fireman's Fund policy, and thereupon tendered to respondent the return of the $8.40 premium received by it and, in connection with the answer, deposited in the registry of the court the sum of $8.40 in pursuance of the tender.

(2)    That the policy sued upon provided as follows:

"This entire policy, unless otherwise provided by agreement endorsed thereon or added thereto, shall be void if the insured now has or shall hereafter make or procure any other

contract of insurance, whether valid or not, on property covered in whole or in part by this policy";

and that, at the time the policy of insurance in this case was issued, respondent had other insurance upon the property covered by the policy, without the knowledge or consent of appellant.

To these affirmative defenses, respondent replied, admitting the existence of the $800 policy in the Fireman's Fund Insurance Company, but denying that it was unknown to appellant, denying that the respondent misrepresented the facts, denying that the appellant would not have issued the policy sued upon if it had known there was other insurance, and denying that appellant first learned of the existence of the Fireman's Fund policy after the fire; and referring to the second affirmative defense, respondent admitted that there was the other insurance, but denied that the other insurance was without the knowledge or consent of appellant.

The case being tried to the court without a jury, the trial court, after hearing the evidence, made and entered findings of fact and conclusions of law in favor of plaintiff and, among other things, found in substance that Benedict & Roberts were the agents of the appellant company at Centralia, Lewis county, Washington, and that, as such agents, they solicited and importuned respondent to take out the policy of insurance which is the subject of this suit, and at the time of and previous to the issuance of the policy, respondent stated to the agents of appellant that he did not know whether there was another policy of insurance upon the building or not, that an agent in Chehalis, Washington, had been carrying insurance upon the building and he did not know whether that policy of insurance had expired or not, and did not know that there was another policy of insurance upon the building until after the building was destroyed by fire on the 21st day of August, 1915, and then it was learned by respondent for the first time that there was another policy of insurance upon the building. As a conclusion of law, the court concluded

that the answers and statements made by respondent as to other insurance upon the building were not made with the intention of defrauding, deceiving, or misleading the agents of the appellant company, and did not prevent the policy of insurance from attaching and becoming a complete policy of insurance.

Two assignments of error are made by appellant, both based upon the affirmative defenses set up in its answer. The first of these is that the policy of insurance issued by appellant is the standard form of policy prescribed by the legislature, and that this policy does not permit additional insurance or concurrent insurance without the written consent of the insurer. It is conceded that the written consent of the insurer to any additional insurance was not given in the instant case. The respondent testified, and the court found, that notice was given to the insurer of the concurrent insurance, as to which respondent did not know whether it had expired or not and it was afterwards found to exist. The policy, in fact, was written by the Fireman's Fund Insurance Company on February 25, 1913, for the term of three years from that date, and therefore did not expire until February 25, 1916, and was in force at the time of the destruction of the premises by fire.

The case hinges largely upon an interpretation of § 1, ch. 192, Laws of 1915, p. 703, amending § 34 of the insurance code as follows:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive. . . ." Rem. Code, § 6059-34.

In construing the effect of this statute in *Woods v. Insurance Co. of Pennsylvania*, 82 Wash. 563, 144 Pac. 650, we said:

"This section refers to three conditions which may affect the validity of the policy or in a measure control the rights

of the insured and the liability of the insurer under the policy: First, representations made in negotiations before issuance of the policy with intent to deceive the insurer; second, breaches of warranty or conditions recited in the policy; and, third, the right of the insured to have the policy considered valid, to the extent of the amount of insurance the premium paid would purchase in the absence of a breached warranty recited in the policy."

In connection with this question, the only representations made by Workman as to the existence of other insurance were that there had been a policy in another insurance company represented by an agent named Coffman in the neighboring town of Chehalis, and that respondent did not have the policy, but that Coffman had it, as he had left it with Coffman, and that he did not know whether the policy had expired or not. Notwithstanding these statements, appellant's agents, being desirous of writing the policy, proceeded without inquiry to write the policy, and retained it in their possession for a considerable time until respondent had paid the premium. It is evident, therefore, if respondent's testimony is to be believed— and there is no preponderance against it—that he made no representations to appellant's agents which were deceptive or could deceive, and that any representations he made were, therefore, not made with intent to deceive.

Appellant insists that the insurance code of this state adopted in 1911, by § 106 thereof (Rem. Code, § 6059-106), prescribes that no fire insurance company shall write any policy of insurance except on what is known as the New York standard form; that the provision requiring other insurance, if permitted, to be indorsed or noted upon the policy, was one required by the law of Washington of which all interested parties were bound to take notice, and must be thereby controlled, and that therefore the policy was void because in contravention of the law; that the defendant cannot read this clause out of the contract. Such a construction of that provision of the insurance code would place the entire burden upon policy holders of seeing that the necessary provisions

were inserted in or indorsed upon the policies upon delivery to them, and if there were any omissions made by the insurer or its agents, such omissions would avoid the policy notwithstanding the innocence of the insured.

In the very recent case of *Ramat v. California Ins. Co.*, 95 Wash. 571, 164 Pac. 219, where a policy was issued to the insured without any indorsement in writing permitting other insurance, and it developed at the trial that the insured had other insurance upon the property in two other insurance companies, the same contention being made as in this case that the nonindorsement of permission for concurrent insurance avoided the policy, Judge Fullerton observed:

"It is argued from this that the statute gives to these provisions of the policy the force of positive law, making them controlling as written; and hence there can be no oral waiver, or waiver by acts, of such provisions, and that there can be no recovery where it is made to appear that there is other insurance on the property not provided by agreement indorsed on the policy or added thereto, . . ."

He then quotes the section of the insurance code relating to oral or written misrepresentation or warranty made in the negotiation of the contract or policy of insurance by the assured or in his behalf, which was heretofore referred to, cited as 3 Rem. & Bal. Code, § 6059-34, and, discussing these several provisions of the statute together, says:

"The second sentence of the section [above cited], it will be observed, provides that the breach of a warranty or condition in any contract of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss. Manifestly the provision of the policy to the effect that the policy should be void if the insured then had or should thereafter procure any other contract of insurance if not indorsed on the policy, was a condition in the contract of insurance. While it existed at the time of the loss, it is plain that it did not contribute thereto. It would seem to require no argument, therefore, to demonstrate that it was the legislative intent that the breach of such a condition should not avoid the

policy. Nor is there anything in the other provisions of the section that would lead to a different result. If the respondent is to be believed, there was no intent or attempt to deceive. He informed the agent of the appellant of the additional insurance, and the policy of insurance was issued to him with full knowledge of such insurance."

It is further observed in that case that:

"While the language of the section quoted may not meet the precise situation, it is especially provided that it shall be liberally construed, and the plain intent of the statute is that liability for losses shall not be avoided for a mere want of a literal compliance with the provisions of the policy which do not contribute to the loss or operate to the injury of the insurer."

The only difference between this case and the one above cited is that in that case the insured testified positively that he informed the agent of the insurer, at the time that he applied for the insurance in question, that he had the other insurance, while in this case the testimony is not positive to that effect, but is only to the effect that the insured informed the agents of the insurer that there had been a policy issued upon the same property, as to which he did not know whether it had expired or not. In any event, in this case, such representations as were made were not false representations, did not deceive, and could not have contributed to the loss. Upon such information as the respondent gave to appellant's agents, it was the duty of the agents either to ascertain whether or not there was any other insurance in force upon the property or to refuse to write the policy of insurance until they had ascertained whether such insurance was in force. The agents who wrote the policy were the authorized agents to execute and deliver such policies, and the knowledge that they had from the insured was knowledge to be imputed to the insurer. Having such facts, it either waived the conditions of its policy or it perpetrated a fraud upon the respondent when it accepted the premium and continued the policy in force until after the loss occurred. It is advisable and the better policy,

of course, to hold that no fraudulent intent could be imputed to appellant in executing and delivering the policy in question, but that it must be presumed that it by mistake omitted to express the effect of other insurance existing on the premises, or waived that provision, and must be held to be estopped from setting it up. *Gray v. Germania Fire Ins. Co.*, 155 N. Y. 180, 49 N. E. 675.

We are convinced, therefore, that the policy of insurance issued and delivered to respondent, under the circumstances shown in this case, was a valid and enforcible policy of insurance, and that the judgment of the lower court is correct.

Affirmed.

ELLIS, C. J., MOUNT, FULLERTON, and PARKER, JJ., concur.