[No. 37868.    Department One.    January 27, 1966.]

FRANCIS L. SYMES *et al.*, *Appellants*, v. LES TEAGLE *et al.*, *Respondents.**

*Reported in 410 P.2d 594.

*Evans, McLaren, Lane, Powell & Moss* (*Frank W. Draper* and *Erik O. Giese,* of counsel), for appellants.

*Williams, Lanza, Kastner & Gibbs* and *William D. Cameron,* for respondents.

HALE, J.—Francis and Ruth Symes traveled from Canada to Seattle in September, 1962, to see the World's Fair. They never made it because, the evening before their first intended visit, Ruth Symes fell and broke her hip in defendants' restaurant.

Defendants own and operate Les Teagle's Prime Rib Restaurant on North Aurora, overlooking Lake Union. Its east wall, running north and south, composed mainly of large windows, affords patrons a view of the lake from tables spaced along it. An aisleway separates the row of window tables from an inner row. The accident, depicted in disputed and conflicting testimony, occurred as Mrs. Teagle, defendant wife, was leading Mr. and Mrs. Symes to a window table in the southeast corner.

It was around 8 p.m.; the resaurant was busy, but not crowded. With Mrs Teagle in the lead, followed a pace or two by Mrs. Symes, and Mr. Symes a step or so farther behind, the three walked in single file down the aisleway alongside the window tables. The accident happened as Mrs. Symes passed a window table being serviced by James Cotton, a university student working as a busboy. He was facing the window, leaning over the table and clearing it, when Mrs. Symes, wearing high heels, walked behind him.

The Symes' and Cotton's versions of the incident differ. Mr. and Mrs. Symes testified that Cotton had his back to Mrs. Symes when she walked past him; that Cotton was facing the window when he suddenly stepped backward,

and in doing so his foot caught hers, tripped her and made her fall. She said:

> Well, I was following Mrs. Teagle, and then as I came up to the table you have marked "T2", there was a boy, a busboy, doing something to it, I don't know whether he was setting it or clearing it, but just as I went to go past him he stepped back and his foot caught mine, and I just went down so suddenly.

Plaintiffs both said that the aisleway was narrow, estimating it at little more than 3 feet.

Defendants, claiming the aisleway to be 7 feet wide based on measurements, described the event differently. Mr. Cotton testified that he was clearing the table when the three walked past him; that he did not step backward at all, but simply turned, felt just the slightest touching on his right arm and saw Mrs. Symes lying on the floor. He denied that he tripped her or even touched her with his foot.

Plaintiffs brought this action to recover for the serious and painful injuries sustained by Mrs. Symes. Although the trial court withdrew contributory negligence as an issue, the jury exonerated the defendants and their employees of the claimed negligence by returning a defense verdict. From a judgment of dismissal entered on the verdict, plaintiffs appeal, making seven assignments of error. We believe two of them merit discussion.

■ Before considering these two assignments of error, we should point out that plaintiffs did not claim negligence in the construction, maintenance or illumination of the carpeted floor on which Mrs. Symes fell. Except for evidence as to the width of the aisleway, plaintiffs' claims of negligence arise from and center about the actions of James Cotton, the busboy, in turning away or stepping back from the table he was then clearing. With contributory negligence eliminated as a defense, the jury obviously reconciled the conflicting evidence in Cotton's favor, and by its verdict found that plaintiffs had failed to prove actionable negligence. *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 381 P.2d 742 (1963). Where substantial evidence supports the ver-

dict, our review is limited to errors assigned which do not involve weighing the evidence.

Plaintiffs claim that defense counsel injected the issue of unavoidable accident into the case in his opening statement and that the court committed error in refusing to give plaintiffs' requested instruction withdrawing that issue. In the opening statement, defense counsel said that the evidence would prove Cotton free of negligence and that the accident probably occurred because of Mrs. Symes' fault. He twice referred to the event as an *unfortunate* accident.

Plaintiffs contend that, when the court later in the trial withdrew from the jury contributory negligence as a defense, the reference to *unfortunate* accident in the opening statement inevitably left the defense of unavoidable accident in issue. They accordingly requested an instruction that "there is no evidence that Mrs. Symes' injury occurred as the result of an unavoidable accident and that issue is withdrawn from your consideration." The court refused the request and gave no instruction whatever on unavoidable accident.

▮▮▮ Unless that issue can be said to have entered the case by way of defendants' opening statement, the idea of unavoidable accident did not otherwise enter or exist in the case to be withdrawn. That counsel's remark put this issue before the jury when, in his opening statement, he said that the proof would show no negligence on either Cotton's or Teagles' part and that Mrs. Symes' injuries arose out of an *unfortunate* accident, seems quite unlikely. The word *unfortunate* obviously was used by counsel in the sense of describing a regrettable and nonvolitional event —an incident from defendants' point of view due to no actions or omissions of defendants and their employees. Characterizing the incident as *unfortunate* merely expressed defendants' position that the expected proof would show plaintiff wife had suffered a misfortune of which the defendants were blameless—a misfortune due neither to their negligent acts nor omissions. We agree, therefore, with the trial court that the issue of unavoidable accident

was not thus left in the case to be withdrawn when the court withdrew contributory negligence as an issue. It may be as erroneous to withdraw by instructions something not in issue as to inject into the case by instructions an issue not in evidence.

Plaintiffs also assign error to the court's ruling that the admission of selected portions of James Cotton's pretrial discovery deposition rendered all other relevant parts of the deposition admissible, including certain unresponsive answers. In February, 1963, well in advance of trial, plaintiffs had taken Cotton's pretrial discovery deposition pursuant to Rule of Pleading, Practice, and Procedure 26, RCW vol. 0, 4 Orland, Wash. Prac. 5. At trial, they requested leave to "read certain portions of the deposition of Mr. Cotton." The court, satisfied that plaintiffs had made a legitimate but fruitless effort to subpoena Cotton, granted leave, and plaintiffs then read more than 10 pages of the deposition to the jury, omitting questions and answers occasionally without objection. At page 13, defendants objected to any further skipping and insisted that the deposition be read in its entirety without further omissions. To the court's ruling that the entire deposition became admissible on behalf of the defendants with the reading of a part thereof by plaintiffs, including unresponsive answers, plaintiffs level their claim of error.

In pointing out, by way of example, the unresponsive nature of some answers, plaintiffs referred to the question on page 11, "What did you do then?" and Cotton's prejudicially unresponsive answer in describing Mr. Symes' behavior, *i.e.*,

"I started to apologize, and the man wouldn't have anything to do with me. I hate to say anything against him. How would you say, he treated me like I was dirt. Maybe I had a right to be, I don't know."

And then we continue:

"Q. What did he say to you? A. He said—oh, boy, now this is really pressing the subject. All I know, he left me with a very bad opinion of this man. Now, if I can remember what he said."

The court then observed that the deposition contained no stipulation reserving objections for trial, and remarked that, since plaintiffs were not calling Cotton as an adverse witness, with consequent right to move against his testimony at the trial, all objections not made at the taking of the deposition were lost and that, if plaintiffs offered any part of the deposition, they must, on defendants' insistence, offer it all.

■ The court's comments that a stipulation reserving objections was essential to preserving them, made, as they were, concerning a pretrial discovery deposition taken under RPPP 26, expressed a doubtful view. Were they the court's last word on the matter so as to constitute a ruling or could reasonably be said to have mislead counsel by dissuading him from further objections, they would likely be error. But mere colloquy or commentary, unless the same can under the circumstances and context be reasonably deemed to constitute a ruling, or an inducement to surrender a procedural right, should not be regarded as error on review.

Subsequent colloquy shows that the court did not intend, nor had counsel a right to assume, that the court's comments were intended as ruling. The court went on to say:

> Now, that is my impression, I will give you a few minutes to reflect on it. My bailiff [law clerk] is trying to find some authority on it. We will take a few minutes' recess.

After recess, the following colloquy took place:

> MR. DRAPER: I appreciate Your Honor's ruling. I didn't want to take up the time of the Court now, nor do I want to interrupt my reading of the deposition to note those questions and answers to which I have objection. I am now going to read the entire deposition in accordance with Your Honor's instructions. If we reconvene at page 10, I could note for the record then the specific questions and answers in this deposition which I am now going to read to which I have objection to preserve my record, why, I propose to do that. I can go through it now, if Your Honor would—THE COURT: Either that, or you can

do it this way: as you are reading and you come to an objectionable question or answer, you might just turn quietly to the reporter and say, "Objection noted." This wouldn't cause any disruption, and I think it will make the record better and more complete. MR. DRAPER: Of course, I have the problem of presenting this to a jury, Your Honor. THE COURT: Yes. MR. DRAPER: I don't like to be put in the position of objecting to the testimony which I am in this case being compelled to put in. THE COURT: I wouldn't think that would embarrass you. Suit yourself. You can do it at one-thirty, if you like. If you can have it reduced to writing, so much the better, your objections. MR. DRAPER: Fine, Your Honor.

We think that the trial court thus granted plaintiffs ample opportunity to object to those parts of the deposition deemed prejudicial and inadmissible, or to note their objections in any way that suited them, even to allowing the preparation of written objections during the noon recess. Despite these announced opportunities, plaintiffs proceeded to read the pretrial deposition of James Cotton as substantive proof in their case in chief without making further objections.

█ We will not consider objections to the evidence unless they have been brought to the attention of the trial court, and that court given an opportunity to rule thereon; nor will we consider grounds not presented to the trial court. *Timm v. Gilliland,* 53 Wn.2d 432, 334 P.2d 539 (1959). Since the court deprived neither party of the right to make timely objections, we find nothing to review with respect to answers to specific questions, for no error pertaining thereto has been preserved.

After plaintiffs had introduced a part of Cotton's deposition defendants offered the remainder and the court ruled the entire deposition admissible. Although, as we have noted, plaintiffs had noted no objections to any specific questions and answers, except those deemed unresponsive, they did preserve their objections to the court's ruling that the whole deposition became admissible with the receipt of a part of it. The court ruled correctly.

Save for the matter of relevancy, RPPP 26(d)(4) sus-

874

tains defendants' position that, with the reading of portions, the remainder of the deposition became admissible. Rule 26 (d) (4) states:

> If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts.

On the question of relevancy, our reading of the entire deposition shows the challenged parts relevant, both to the selected parts read by plaintiffs and to the issues in the case. RPPP 26 (d) (4) renders admissible at the request of either party all relevant parts of a discovery deposition taken from a witness whose attendance cannot with diligence be compelled at trial and all other parts of the same deposition relevant to the portions read into evidence become likewise admissible under RPPP 26 (d) (4).

Finally, did the court properly admit the unresponsive answers?

Plaintiffs made no objections *in* the deposition on the grounds of unresponsiveness. Whether the court ruled correctly at trial in allowing the unresponsive answers to stand may be ascertained from a reading of Rule of Pleading, Practice, and Procedure 32 (c) (1), RCW vol. 0, 4 Orland, Wash. Prac. 115, which says:

> Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

■ Despite some loose and duplicitous language concerning the taking and employment of oral depositions, they can be said to fall under the five separate and somewhat overlapping rules, 26, 27, 28, 30 and 32 of Rules of Pleading, Practice, and Procedure, RCW vol. 0, 4 Orland, Wash. Prac., 4 Moore, Fed. Prac., ¶ 26.15, *et seq.* These five rules should be read in pari materia. Rule 32 (c) (1), by necessary implication and expressly through RPPP 26 (e), prescribes the main principles to be applied when

passing upon objections in depositions taken under RPPP 26. Under RPPP 32(c)(1), if the ground of the objection might have been obviated or removed had the objection been presented before or at the taking of the deposition, the failure to make the objection at that time constitutes a waiver of the right to do so at trial should the deposition be offered later as substantive evidence.

■ Objections based on unresponsiveness apparently fall within that class of objections the grounds of which would be obviated or removed if timely made. The stating of an objection to an unresponsive answer followed by a renewal of the question would probably induce the witness to give a responsive answer and thus obviate and remove the grounds for the objection. Because plaintiffs made no objections before or in the deposition to Cotton's unresponsive answers, under RPPP 32(c)(1) they are deemed, therefore, to have waived that precise objection on that particular ground at trial. The trial court quite properly overruled plaintiffs' objections to Cotton's unresponsive answers.

Judgment affirmed.

ROSELLINI, C. J., OTT and HUNTER, JJ., and COCHRAN, J. Pro Tem., concur.