[No. 219-3.    Division Three.    July 29, 1971.]

THE STATE OF WASHINGTON, *Appellant,* v. MAUDE HOBART *et al., Respondents.*

*Slade Gorton, Attorney General,* and *John J. Champagne, Assistant,* for appellant.

*Jay Roy Jones,* for respondents.

GREEN, J.—On May 31, 1968, this action was commenced to acquire 14.81 acres of land for a pit and stockpile site to be used for the construction, maintenance and operation of state primary Highway 3 (sign route 129). At that time, the area was under lease to the state for the extraction of gravel and was so leased at other times beginning in 1956. Photographs, as well as maps introduced in evidence, show the area was a developed pit site. The state appeals from a judgment awarding respondent $11,500.

The state contends the highest and best use of the property is for agricultural purposes because there is no present market demand for pit sites and no comparable sales in the immediate vicinity. On the other hand, respondent contends the highest and best use is for a pit site; and although no present market demand exists, planned developments in the near future will create such demand thereby affecting present market value.

First, error is assigned to the court's admission of and failure to strike the value testimony of respondent's witness, Stanley LaFrenz. LaFrenz, a 25-year resident of the

area, was president of Lewiston Pre-Mix Concrete, Inc. In the course of his examination, LaFrenz testified:

Q Now based on your over 20 years' experience in the rock and sand and gravel field, Mr. LaFrenz, and your purchasing of material at various times, do you have an opinion of the unit value—cubic yard value of basalt rock in the Hobart site in place?

A The material I would say would be at the minimum approximately 10 cents a cubic yard on a royalty basis. I would approach it from that aspect.

It is contended this testimony was not admissible because there was no showing of a present market demand.

■ LaFrenz did not appraise or value the entire property nor determine the quantity of material in the site. He did, however, testify to facts indicating a reasonable future demand for rock. Respondent's other witnesses testified to the same effect. In determining highest and best use, evidence of prior, present and future use in light of reasonably anticipated demands is admissible. 4 Nichols on Eminent Domain § 12.1(3) (3d ed. 1962); *In re Issaquah,* 31 Wn.2d 556, 197 P.2d 1018 (1948). We believe the state's objection goes to the weight rather than the admissibility of the testimony.

■ ■ It is urged LaFrenz' use of the term "royalty" rendered the testimony inadmissible because the unit value was not for rock in place. The state did not object to the testimony on this ground; therefore, the objection cannot be considered on appeal. *Symes v. Teagle,* 67 Wn.2d 867, 873, 410 P.2d 594 (1966). Evidence of unit value of gravel in its natural state is admissible as a factor in determining overall market value; there is no indication unit value in this case was multiplied by the quantity to arrive at the overall value. *State v. Mottman Mercantile Co.,* 51 Wn.2d 722, 321 P.2d 912 (1958).

■ Second, error is assigned to the admission of testimony by respondent as to lease payments made to her by the state. It is contended this testimony should not have been admitted because evidence of the purchase price paid by a condemnor for similar property is inadmissible, citing

*Port Townsend Southern R.R. v. Barbare,* 46 Wash. 275, 89 P. 710 (1907), and *State v. Larson,* 54 Wn.2d 86, 338 P.2d 135 (1959); further, it tended to show a demand created by the condemnor for rock. We disagree. The lease in question was one of several leases or contracts dating back to 1956. There is no evidence these leases were negotiated under threat of condemnation. They constituted some evidence of demand and reflect then prevailing market prices. The lease in effect when this condemnation was commenced provided for a payment rate of 10 cents per cubic yard of material removed. The testimony of LaFrenz that the rock in place would be worth a minimum of 10 cents per cubic yard supports the position the lease reflects the prevailing market.

In *Port Townsend Southern R.R. v. Barbare, supra,* it was held that evidence of purchases by the railroad of similar property for the same project at about the same time was inadmissible. This rule is properly applied in such cases because the purchases and sales are made under threat of condemnation and do not reflect the price agreeable between an unobligated buyer and seller. This situation does not prevail in this case. The prior lease was not negotiated under a cloud of threatened condemnation. While it could be said the state had the power to condemn, there is no showing they threatened to do so or that the lease was in any way related to the present condemnation.

Likewise, *State v. Larson, supra,* does not apply. There the landowner sought to introduce a lease wherein the state agreed to pay 10 cents per yard for gravel in place. The landowner attempted to establish his opinion of market value by multiplying the price per yard provided in the lease times the quantity. This entire testimony was rejected under the rule of *State v. Mottman Mercantile Co., supra,* there being no evidence that a prospective purchaser would pay that price for the whole property. This case is distinguishable. Here, there is no attempt to arrive at a market value by the method used in *State v. Larson, supra.*

Third, error is assigned to the admission of respondent's value testimony because respondent also testified:

Q Have you arrived at the figure of $23,000 or $30,000 by multiplying yards of material available?

A Not exactly, no, I think about—well, yes, you do in a way kind of multiply it, and I think it should be worth that.

It is contended this testimony shows respondent, in arriving at her opinion of value, violated the rule that value cannot be computed by multiplying an assumed number of yards of material times a price per unit, citing *State v. Larson, supra,* and *State v. Rowley,* 74 Wn.2d 328, 444 P.2d 695 (1968). We recognize the rule of these two cases, but disagree the rule is applicable.

Respondent's entire testimony reflects her valuation was based upon other factors besides quantity and unit price, *e.g.,* her husband's prior experience in the asphalt business, her familiarity with the area and the rock business, and the appraisals that were made. One of respondent's expert witnesses estimated the pit contained 597,100 cubic yards of material. LaFrenz testified the material in place was worth 10 cents a cubic yard. If respondent had multiplied the two together, she would have arrived at a value of $59,710. In contrast, respondent's testimony was $23,000 to $30,000.

Fourth, with respect to the testimony of Gary T. Meisner, an expert appraiser for respondent, it is contended the court erred in (a) failing to exclude his testimony because it was based upon a speculative future use unsupported by market evidence; (b) allowing him to testify as to comparable sales for which no comparability in use or economic area was shown and for which no market demand appeared; and (c) refusing to strike his testimony because it was unsupported by market evidence and was in conflict with uncontroverted factual testimony to the contrary.

Meisner admitted there were no sales of pit sites in the vicinity except to the highway department. He made a survey of the future needs and reviewed projects in various stages of present development. Based thereon, he was of

the opinion a demand would exist for this developed pit site within the reasonably foreseeable future. We find no error. The objection raised by the state goes to the weight rather than the admissibility of the testimony. Moreover, the court's instructions told the jury there must be a market demand for the property that is not remote or speculative; and, they could take into consideration the existing wants of the community or such wants as may be reasonably expected in the near future. It is presumed the jury followed these instructions. *Myers v. Harter,* 76 Wn.2d 772, 459 P.2d 25 (1969).

■ The admissibility of sales for comparative value purposes is a discretionary matter resting almost exclusively with the trial court. *State v. Rowley, supra* at 330. Having this rule in mind, we turn to the state's contention that certain comparable sales should not have been admitted. The first sale was to the Ace Concrete Co. It did not involve a site containing quarry rock but, rather, sand. By reason of this difference, the state contends the sale is not comparable. We disagree because other testimony showed that sand and basalt rock of the type here involved are used interchangeably as concrete aggregate. This we believe sufficient to meet the issue of comparability. Its weight was for the jury.

Another sale within 2 miles of the subject property was made to the Lewiston Grain Growers. The state objected upon the ground there was no showing of any demand in the area for grain elevator sites and, further, no foundation was laid. Meisner testified this sale was inferior to the subject property because while both could be classed as light industrial property, the subject property had an additional use as a developed pit site. The state engaged in extensive cross-examination of Meisner, affording the jury a full opportunity to evaluate his testimony. We find no abuse of discretion in overruling the objection. The other sale was to Western Farmers. No objection was interposed to this testimony and therefore the error assigned on ap-

peal will not be considered. *State v. Jones,* 70 Wn.2d 591, 424 P.2d 665 (1967).

Fifth, error is assigned to the giving of instruction No. 3:

This is an action brought by petitioner for the purpose of acquiring certain property as described in evidence admitted in this case. This property is a 14.81 acre tract of land sought by the petition for the purpose of a pit and stockpile site to be used for the construction, operation and maintenance of State Highway SR 129.

and the failure to give state's proposed instruction No. 3. The state objects because the instruction states the specific purpose for which the property is acquired and unduly emphasizes its use as a pit site. The court's instruction was taken verbatim from the petition filed by the state. A jury may be instructed in the language of the complaint. *Murray v. Mossman,* 52 Wn.2d 885, 329 P.2d 1089 (1958). Taking this instruction in the context of all the other given instructions, we find no error. Since the instruction given covers the subject matter of the proposed instruction, the latter was properly refused.

Last, the state assigns error to the giving of the italicized portion of instruction No. 5:

"Just compensation" is the difference between the fair market value of the entire property with a 14.81 acre developed quarry site on it before the acquisition and the fair market value of the remainder after the acquisition of the *14.81 acre developed quarry site* measured as of the date of the trial.

(Italics ours.) and the failure to give the state's proposed instruction No. 5. It is contended this instruction highlights the state's former and intended use of the subject property; further, the instruction is a comment on the major trial issue, namely, the highest and best use of the property. We are unable to agree. The evidence is uncontradicted the property contained a developed pit site at the time of acquisition; it was under lease to the state for this purpose. The trial issue concerned a present or future demand for the property as a pit site—the state taking the position

there was no such demand and therefore the highest and best use was as agricultural property to be used with surrounding farm land. The instruction merely acknowledged an existing fact. Since the given instruction covers the subject matter of proposed instruction No. 5, the latter was properly refused.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.