[No. 1380-1.    Division One—Panel 1.    April 2, 1973.]

Soo K. WILBURN, *Appellant*, v. PIONEER MUTUAL LIFE
INSURANCE COMPANY, *Respondent*.

*Witt, Hutchins, Plumb & Wheeler* and *Edwin J. Wheeler,* for appellant.

*Davies, Pearson, Anderson, Gadbow & Hayes, P.S.,* and *John C. Kouklis,* for respondent.

JAMES, J.—Plaintiff Soo Wilburn is the named beneficiary in a policy of insurance written by defendant Pioneer Mutual Life Insurance Company upon the life of her deceased husband. The insured died before the policy became incontestable. Pioneer refused to pay upon proof of death, claiming that it was induced to issue the policy by the deceased's false representations "made with intent to deceive."

By this action Mrs. Wilburn seeks recovery of the policy's benefits. The trial judge found for Pioneer. We affirm.

Wilburn's appeal presents two basic questions: (1) Were the deceased's army medical records properly admitted and properly considered; and (2) did the evidence thus produced establish actionable fraud? The hospital records were admitted pursuant to the provisions of The Uniform Business Records as Evidence Act, RCW 5.45.020.

In his application for insurance, the deceased stated that his only consultation with a physician during the past 5 years was occasioned by a routine army physical examination. The evidence produced by the army medical records revealed that the deceased had been treated for hepatitis, pneumonia, and malaria. The records further disclosed that he had been discharged from an army hospital after more

than 3 weeks of hospitalization only 3½ months prior to the date of his insurance application. The diagnosis of his illness on that occasion was "schizophrenic reaction, paranoid type, acute, severe, manifested by loose associations, paranoid delusions and disorganization of behavior." In his application the deceased expressly denied "any hospital confinement during the last 5 years."

An underwriter for Pioneer testified that had the application disclosed that the deceased had been hospitalized with a diagnosis of schizophrenia, "the company would have rejected the application." The trial judge's findings (erroneously denominated conclusions) were:

> The insured made a false report to the defendant company concerning prior hospitalizations and prior illnesses.

Conclusion of law No. 4.

> The false statements made by insured were made with actual intent to deceive the defendant company.

Conclusion of law No. 5.

> The failure of the insured to disclose material facts to the defendant company was material to the acceptance of the insured as a policy holder, and was material to the hazard assumed by defendant company.

Conclusion of law No. 6.

The trial judge concluded:

> The evidence of prior hospitalizations and illnesses was sufficient, considering all pertinent evidence in the case, to establish fraud and an attempt to deceive the defendant company.

Conclusion of law No. 3.

▉ Wilburn first argues that the hospital records were inadmissible because not identified by a qualified custodian. This objection is raised for the first time on appeal and cannot be considered. "We will not consider objections to the evidence unless they have been brought to the attention of the trial court, and that court given an opportunity to rule thereon; . . ." *Symes v. Teagle,* 67 Wn.2d 867, 873, 410 P.2d 594 (1966); *Snohomish County Bldrs. Ass'n v.*

*Snohomish Health Dist.*, 8 Wn. App. 589, 508 P.2d 617 (1973).

■■ Wilburn next argues that the "past medical history" portions of the medical records were necessarily recordings of "hearsay" statements which could not be considered as proof that the deceased in fact suffered from the illnesses described. As to the deceased's mental illness, this contention must be rejected because the fact that he suffered from schizophrenia is revealed as "diagnosis" rather than as "history." At trial, counsel conceded that the hospital's diagnostic record is not hearsay.

> THE COURT: If I understand, Mr. Wheeler's motion is to strike or to remove from the evidence these records in its entirety.
>
> MR. WHEELER: That, Your Honor, I would not want my motion to be that broadly construed, and I apologize if I indicated as such. I have no objection to the court considering what is in the records with the exception to the exception of this part. I would object to the court taking into consideration indications in the medical records wherever they may appear of statements made or of information gathered from some other source to the attending physician regarding the condition prior to the time he was admitted to the hospital, other parts of the medical records having to do with his treatment while he was there, diagnosis of a sort, we don't object to, except that they may be immaterial.

Additionally, the physician who treated the deceased during his last illness testified that the deceased told him of his prior illnesses and of his hospitalization for schizophrenia. While this testimony is hearsay as to whether the deceased actually had the illnesses he reported, it is not hearsay as to whether he so informed the doctor. It is therefore competent evidence concerning the basic issue of the case: Did the deceased fraudulently conceal information of prior illnesses and medical consultation? The trial judge properly admitted and considered the deceased's hospital records and the testimony of his treating physician in determining that the deceased had been hospitalized and

had consulted physicians for reasons other than his routine army physical examinations.

We next consider whether the evidence thus produced establishes actionable fraud, *i.e.*, Pioneer's right to deny liability. An insurance company's common-law right to deny liability on the ground of an alleged misrepresentation in an application is circumscribed by statute. By RCW 48.18.090 (2), an insurance company is burdened with the requirement of proving that either the misrepresentation was made with "actual intent to deceive" or that the misrepresentation was such that it "materially affected either the acceptance of the risk or the hazard assumed by the insurer."

■■ Whether a misrepresentation is made with intent to deceive is a question of fact. However, proof that a material false statement was made knowingly raises a presumption that it was made with intent to deceive. *Music v. United Ins. Co. of America,* 59 Wn.2d 765, 370 P.2d 603 (1962). In the absence of credible evidence that false representations were made *without* intent to deceive, the presumption prevails. *Kay v. Occidental Life Ins. Co.,* 28 Wn.2d 300, 183 P.2d 181 (1947). The deceased's concealment of the facts concerning his illnesses, medical consultations and hospitalizations was unquestionably a material consideration in evaluating Pioneer's risk. Wilburn offered no evidence to rebut the presumption of fraudulent intent. The trial judge's findings that the deceased's misrepresentations were made with actual intent to deceive and that they were such as to materially affect the hazard assumed by Pioneer are supported by substantial evidence. We are bound to accept them. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Finally, Wilburn asserts that Pioneer should be estopped from asserting fraud because, in his application, the deceased authorized "any physician, hospital or clinic" to supply Pioneer with "any information you have with reference to [his] medical history . . . or hospitalization." The

case relied upon, *Workman v. Royal Exch. Assurance,* 96 Wash. 559, 165 P. 488 (1917), does not support Wilburn's argument. In *Workman,* the insured *did* inform the insurance company that there had been a policy of insurance upon his property and that "he did not know whether [it] had expired or not." *Workman v. Royal Exch. Assurance, supra* at 561. Under these circumstances, it was held that "by mistake [the insurance company] omitted to express the effect of other insurance existing on the premises, or waived that provision, and must be held to be estopped from setting it up." *Workman v. Royal Exch. Assurance, supra* at 566. Here, the deceased denied "any hospital confinement [within] the last 5 years" and declared that "I have read and understand all the statements and answers in this application and that they are true and completely recorded whether written by my hand or not."

Pioneer was under no obligation to assume that the deceased's declaration was false. It had no duty to disregard his avowal of complete disclosure and seek out undisclosed medical records.

> Where a fact is specifically inquired about, or a question so framed as to elicit a desired fact, a full disclosure must be made, and the insurer has a right to rely upon the answer.

(Footnote omitted.) 12 J. Appleman, *Insurance Law & Practice* § 7292 (1943).

> [T]he insurance company has a *right to rely* upon representations and . . . *there is no duty on their* [*sic*] *part to question the veracity of the applicant and no duty to pursue.*

*Byrnes v. Mutual Life Ins. Co.,* 217 F.2d 497, 502 (9th Cir. 1954), *cert. denied,* 348 U.S. 971, 99 L. Ed. 756, 75 S. Ct. 532 (1955). *Accord, Meier v. Manhattan Life Ins. Co.,* 59 Wn.2d 257, 367 P.2d 151 (1961).

The trial judge's findings of fact and conclusions of law support the judgment of dismissal.

Affirmed.

SWANSON, C.J., and FARRIS, J., concur.