[No. 28701-0-I.   Division One.   May 10, 1993.]

THE CITY OF BELLEVUE, *Appellant*, v. HILTON J. KRAVIK, ET AL, *Respondents*.

*Richard L. Andrews, City Attorney,* and *Patrice C. Cole* and *Scott C. McKee, Assistants,* for appellant.

*Richard M. Foreman, Lee Kraft,* and *Kraft & Kimbrough; Edgar R. Rombauer, Philip A. Talmadge,* and *Talmadge & Cutler, P.S.,* for respondents.

WEBSTER, C.J. — This appeal arises out of the City of Bellevue's efforts to condemn property for parks and open space purposes. The jury returned a verdict in favor of the property owners[1] totaling approximately $3.436 million. We affirm.

## FACTS

The area surrounding the property owners' land is mostly commercial in nature. Low intensity office use is designated on both the east and west. State Route 520 borders the properties on the south, and the view across the freeway is primarily of a light industrial area. The area to the north of the properties is designated suburban residential. In November 1987, Bellevue designated the property owners' land for a park in the City's comprehensive plan. A park bond issue including the properties was passed in late 1988. After the bond issue was passed Bellevue considered whether the prop-

---

[1]Hilton Kravik, Letha Woodard, and the Smith Estate Trust (whose primary beneficiaries are Children's Hospital and a handicapped daughter of the Smiths).

erties should be rezoned to open space public (a lower use) or multifamily (a higher use). In a public study session of the Bellevue City Council, December 1988, a conflict of interest/ appearance of fairness concern was raised. If the council changed the zoning to a lower use for a park, it would lower the price it would ultimately have to pay for the properties; if it changed the zoning to a higher use, it would raise the price. The City retained the zoning of the properties as low intensity single family.

After the property owners filed a claim for inverse condemnation, Bellevue petitioned for condemnation of the properties. At trial the property owners submitted evidence in support of their position that a reasonable legislative body would rezone the properties. The evidence indicated that there are substantial noise and pollution problems which preclude use of the land for single-family residences. Feasibility for commercial office use was not a problem.

## DISCUSSION

Bellevue first claims the validity of the current zoning should have been resolved prior to the jury's considering the value of the properties if zoning were to be changed. Bellevue argues it was error for the trial court to admit evidence that the value of the subject property had been suppressed without first making a determination that there had been unreasonable precondemnation activity and that the existing zoning was arbitrary, capricious and outrageous.

In a condemnation proceeding the value of property is normally limited to the uses for which it is available under the existing zoning regulations. *State v. Motor Freight Terminals, Inc.*, 57 Wn.2d 442, 443, 357 P.2d 861 (1960). However, where a governmental body has intentionally manipulated the zoning to depress the value of the property being condemned, the property owner has the right to present evidence of such conduct to the jury on the issue of the reasonable probability of a rezone. *See, e.g., United States v. Meadow Brook Club*, 259 F.2d 41 (2d Cir.), *cert. denied*, 358 U.S.

921 (1958); *People ex rel. Department of Pub. Works v. Southern Pac. Transp. Co.*, 33 Cal. App. 3d 960, 109 Cal. Rptr. 525 (1973). The effect of rezoning on the fair market value of property may be used "when a particular use of the property, to which it is adapted, is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future". *Motor Freight*, at 443.

There is no requirement that the trial court make a threshold determination or that the jury find the current zoning is arbitrary, capricious and outrageous prior to the jury's considering evidence of a reasonable probability of a rezone. In *Motor Freight*, the court held that the trial court's finding that a refusal to rezone was arbitrary, capricious and outrageous was within the larger range of circumstances which justify valuing property based on the reasonable probability of a rezone, and was not a collateral attack on the zoning ordinance or its application. *Motor Freight*, at 445; *see State v. Kruger*, 77 Wn.2d 105, 459 P.2d 648 (1969); *State v. Sherrill*, 13 Wn App. 250, 534 P.2d 598, *review denied*, 86 Wn.2d 1002 (1975).

Additionally, Bellevue argues that evidence of improper motive should have been excluded, on the issue of a probability of a rezone. The doctrine of invited error prevents a party from complaining on appeal about an issue it created at trial. *State v. Young*, 63 Wn. App. 324, 330, 818 P.2d 1375 (1991). Here, Bellevue resisted the property owners' motion to exclude evidence relating to the City's comprehensive plan review process. It argued that evidence of the comprehensive plan review process was necessary to show that Bellevue's process was "eminently fair", and that it had "acted reasonably". Counsel for the property owners warned that evidence relating to the comprehensive plan would "open up" the case to evidence of Bellevue's conflict of interest, calculated to depress the value of the property. The trial court denied the property owners' motion. Bellevue opened the door to admis-

sion of evidence of its comprehensive plan review process and invited any error in admitting that evidence.

■■ Bellevue next claims the court erred in rejecting its jury instructions (12 and 13). The test for sufficiency of jury instructions is whether they allow counsel to argue their theory of the case, are not misleading, and properly inform the trier of fact of the applicable law. *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985). A party objecting to a jury instruction has an affirmative obligation to offer a correct statement of the law on the issue. *Crossen v. Skagit Cy.*, 100 Wn.2d 355, 361, 669 P.2d 1244 (1983).

Bellevue objected to jury instruction 6 and submitted its own instructions:

Court's Instruction 6:
You are to value the property in view of uses permitted under present zoning. However, if you find there is a reasonable probability that zoning will be changed in the near future, you may consider the effect of such probability on the fair market value of the property.

Proposed Instruction 12:
If, considering all of the evidence, you find that the present zoning on a parcel is arbitrary, capricious and outrageous, you may assume not the certainty but the reasonable probability that a responsible governing body will do what reason and common sense dictate should be done.

Proposed Instruction 13:
An action is outrageous if it violates the concept of fundamental fairness inherent in due process and shocks the sense of universal justice mandated by the due process clause.

The elements of arbitrary, capricious, and outrageous zoning as proposed by Bellevue were not elements of the property owners' affirmative burden of proof. Thus, Bellevue's proposed instructions 12 and 13 on the probability of a rezone were an incorrect statement of law. Jury instruction 6 correctly informed the jury that if it found a reasonable probability of a rezone it could consider the effect of that rezone on the fair market value of the properties. We find no error.

Bellevue also claims that the property owners were required to exhaust administrative remedies by actually applying for a rezone before the jury could consider a reasonable probability of a rezone. It argues that in asserting a probability of a rezone and its effect on the value of their property the property owners were alleging that the City had invalidly imposed suburban residential zoning on their properties, *i.e.*, raising inverse condemnation issues.[2]

■ ■ Exhaustion of remedies does not apply where it would be futile. *Orion Corp. v. State*, 103 Wn.2d 441, 457, 693 P.2d 1369 (1985). It would be futile to request a rezone from a governmental entity which has decided to acquire the property by condemnation. Here, the relief requested could only result in raising the cost of the condemnation action. We find that in a condemnation case the property owners need not have applied for a rezone for the jury to consider the reasonable probability of a rezone in valuing the properties.[3]

■ Bellevue next claims that the trial court should not have permitted expert testimony as to noise standards, comparable sales and testimony concerning past purchase offers. Relevance issues are reviewed on an abuse of discretion standard. *State v. Wilson*, 60 Wn. App. 887, 808 P.2d 754, *review denied*, 117 Wn.2d 1010 (1991). Here, expert testimony as to noise levels on the properties, comparable sales and past purchase offers was relevant on the issue of a probability of a rezone. The testimony indicated the proper-

---

[2]Bellevue incorrectly characterizes the issue as one of inverse condemnation. An inverse condemnation case involves a regulatory taking (limiting the use of land), not a taking where the government entity acquires title to the land. *See Estate of Friedman v. Pierce Cy.*, 112 Wn.2d 68, 69, 768 P.2d 462, 463 (1989). Application for and denial of a rezone request is an issue appropriate to land use, not when valuing land upon condemnation.

[3]We do not address whether exhaustion of administrative remedies may apply in a condemnation case where an application for rezone had previously been disapproved and no appeal had been taken thereof.

ties were unsuitable for currently zoned use, *i.e.*, single-family residences.

■ Bellevue argues that a Washington State regulation setting out noise standards did not apply to the properties in question and the testimony concerning noise was improper because it implied the standards did apply. The jury is presumed to have followed the trial court's instruction regarding evidentiary rulings. *State v. Hobart*, 5 Wn. App. 469, 487 P.2d 635 (1971). The trial court ordered the reference to a Washington State noise level regulation (WAC 173-60) be stricken and admonished the jury to disregard it in its jury instructions. Additionally, Bellevue cross-examined the noise expert and established that the noise levels and recommendations the expert had earlier referred to did not apply to Bellevue. Any ambiguity as to the applicability of noise standards was resolved by the court's instruction and Bellevue's opportunity to cross-examine the expert. Since Bellevue has not shown any prejudice from the stricken reference, the presumption that the jury followed the court's instruction to disregard holds.

■ Bellevue next argues that evidence of past offers was hearsay and should have been excluded. A party is obligated to renew an objection to evidence that is the subject of a motion in limine in order to preserve the error for review. *Sturgeon v. Celotex Corp.*, 52 Wn. App. 609, 623, 762 P.2d 1156 (1988). The trial court granted in part Bellevue's motion in limine to exclude evidence of past offers on the properties. The court excluded any reference to price, oral offers and offers not previously provided to Bellevue. We do not review the claimed error since Bellevue failed to renew its objection when the evidence of past offers was introduced at trial.

■ Bellevue also argues the court erred in allowing testimony of an expert based upon evidence which was itself inadmissible. Expert opinion may be given even where the underlying factual material would otherwise be inadmissible. ER 703; *see Group Health Coop. of Puget Sound, Inc. v. Department of Rev.*, 106 Wn.2d 391, 400, 722 P.2d 787

(1986). In eminent domain cases, substantial discretion rests with the trial court as to testimony of experts with respect to comparable sales in terms of similarities of land and the currency of the value. *State v. Rowley*, 74 Wn.2d 328, 330, 444 P.2d 695 (1968). We find no abuse of discretion in admitting the expert's testimony as to value of the properties; the opinion was not based on evidence which had been excluded.

Bellevue next claims disparaging remarks by the property owners' counsel made a fair trial impossible. It argues that the use of exhibits and counsel's remarks referring to "Bellevue Land Grab" tended to inflame the jury and, thus, was prejudicial. A jury verdict must be reversed only if there is a substantial likelihood that the alleged misconduct affected the jury's verdict. *Carnation Co. v. Hill*, 115 Wn.2d 184, 186, 796 P.2d 416 (1990). Again, a jury is presumed to follow an instruction directing it to disregard statements of counsel not supported by the law or evidence, and that presumption will prevail until it is overcome by a showing otherwise. *Nichols v. Lackie*, 58 Wn. App. 904, 907, 795 P.2d 722 (1990), *review denied*, 116 Wn.2d 1024 (1991). To preserve an error relating to misconduct of counsel, a party should object to the statement, seek a curative instruction, and move for a mistrial or new trial. Absent an objection to counsel's remarks, the issue of misconduct cannot be raised on appeal unless the misconduct is so flagrant and ill intentioned that no curative instructions could have obviated the prejudice engendered by the misconduct. *State v. Ziegler*, 114 Wn.2d 533, 540, 789 P.2d 79 (1990).

During the opening statement Bellevue objected to counsel for Smith and Woodard writing on the exhibit the words "Land Grab" and essentially arguing her case to the jury. The court overruled the objection. The trial court instructed the jury not to treat counsel's statements as fact or law. Bellevue did not seek a curative instruction or file a motion for a new trial. Bellevue has presented no evidence to overcome the presumption that the jury followed the court's instruction not to treat counsel's statements as law or fact.

Additionally, we do not find the reference to Bellevue's Land Grab so flagrant that a jury instruction could not cure any prejudice it may have engendered.

Bellevue next claims that counsel for the property owners engaged in misconduct by allegedly mentioning the financial need and physical infirmities of the property owners. Bellevue moved to exclude references to the Smith Trust beneficiaries on the theory that jury sympathy would be engendered; the property owners wanted to explain to the jury why the plaintiffs were not in court. The trial court limited the scope of what counsel could ask and the answer. Bellevue did not object to the court's ruling. At trial the question was asked and answered, and Bellevue again did not object. Since Bellevue did not object to the court's ruling or the question and answer, the error is not preserved. *Sturgeon*, at 623.

We affirm and award attorney fees in accordance with RAP 18.1.

COLEMAN and AGID, JJ., concur.