**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TUDOR INSURANCE COMPANY, | No. 11-35753 |
| Plaintiff - counter-defedant- Appellee, | D.C. No. 3:10-cv-05925-BHS |
| v. | |
| HELLICKSON REAL ESTATE et al., | MEMORANDUM[*] |
| Defendants-counter-claimants-Appellants. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted August 30, 2012
Seattle, Washington

Before: SCHROEDER and GOULD, Circuit Judges, and FRIEDMAN, Senior
District Judge.[**]

Michael and Tara Hellickson are real estate brokers who own Hellickson

Real Estate and several affiliated companies, and who obtained a professional

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Paul L. Friedman, Senior District Judge for the U.S. District Court for the District of Columbia, sitting by designation.

errors and omissions liability policy from Tudor Insurance Company. Tudor later brought suit against the Hellicksons, seeking a declaratory judgment that it was entitled to rescind the policy based on fraudulent misrepresentations made by the Hellicksons in their two policy applications. The district court granted summary judgment to Tudor and dismissed the Hellicksons' counterclaims.

The district court, applying settled principles, correctly held that Tudor was entitled to rescind its contract with the Hellicksons if they made material misrepresentations in their insurance applications with the intent to deceive. *See* RCW 48.18.090(1); *St. Paul Mercury Ins. Co. v. Salovich*, 705 P.2d 812, 814 (Wash. Ct. App. 1985) (citing *Kay v. Occidental Life Ins. Co.*, 183 P.2d 181 (Wash. 1947)). It also correctly held that there were no genuine issues of material fact regarding whether the misrepresentations in the Hellicksons' policy applications were material and made with the intent to deceive Tudor.

The Hellicksons had been notified by the state authorities and thus were well aware of at least ten complaints filed against them with the Washington Department of Licensing ("DOL"), and of the resulting DOL investigations, at the time that they professed no knowledge of such matters in their policy applications. In Washington state, "if an insured knowingly makes a false statement, courts will presume that the insured intended to deceive the insurance company," *Ki Sin Kim*

2

*v. Allstate Ins. Co.*, 223 P.3d 1180, 1189 (Wash. Ct. App. 2009), and the presumption prevails "[i]n the absence of credible evidence that false representations were made *without* [an] intent to deceive . . . ."  *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1004 (W.D. Wash. 2004) (quoting *Wilburn v. Pioneer Mut. Life Ins. Co.*, 508 P.2d 632, 635 (Wash. Ct. App. 1973)).  Tara Hellickson's professed misinterpretation of one of the application questions does not create a factual dispute about whether her false statement was made knowingly, particularly since her explanation accounts for only one of the Hellicksons' omissions and her professed interpretation is incompatible with the clear language of the question.

Nor have the Hellicksons provided any evidence to rebut the presumption that their knowing misrepresentations were made with the intent to deceive.  Although the Hellicksons informed Tudor about a fine they received from a private listing agency — an act that they maintain put Tudor on notice of facts that could have led it to discover the DOL investigations — the relevance of this act is dubious and attenuated at best.  Furthermore, the fact that the Hellicksons already had insurance coverage with a different provider at the time they applied to Tudor, without more, is not evidence rebutting the presumption of deceitful intent.  To raise a fact issue for trial, "the non-moving party must present more than a 'mere . .

3

. scintilla of evidence' to defeat a motion for summary judgment." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068 (9th Cir. 2011) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).

The Hellicksons likewise have failed to demonstrate any genuine factual dispute about whether their misrepresentations were material. *Levy v. N. Am. Co. for Life & Health Ins.*, 586 P.2d 845 (Wash. 1978), the case upon which they primarily rely, does not address the issue of materiality but rather the existence of a misrepresentation. *See id.* at 848–50. In *Rowley v. USAA Life Ins. Co.*, 670 F. Supp. 2d 1199, 1204 (W.D. Wash. 2009), the applicant made partial disclosures to the insurer about the same matter that he later was accused of concealing. By contrast, the Hellicksons revealed nothing to Tudor about the existence of the DOL investigations, but instead disclosed only a listing agency fine that they averred had been "handled through appeal" and "reduced or dropped" with "no claims made." As the district court discerned, Tudor's failure to investigate that incident does not create a factual question about whether numerous and ongoing disciplinary investigations by the state licensing authority prompted by a slew of complaints against the Hellicksons for misrepresentation, negligence, incompetence, and malpractice were material to Tudor's risk.

4

Finally, the district court did not err by adjudicating Tudor's rescission claim before addressing the Hellicksons' counterclaims. According to the Hellicksons, where an insurer breaches in bad faith its duty to defend a policyholder, the insurer is estopped from asserting any defense to coverage, including the invalidity of the insurance contract. If the district court had found that Tudor acted in bad faith by refusing to defend the Hellicksons, so this argument goes, Tudor would have been estopped from rescinding the contract regardless of the Hellicksons' fraud.

This argument is untethered from Washington state case law, which establishes only that an insurer who refuses to defend a policyholder in bad faith may be estopped from disputing the scope of coverage provided by a valid contract. *See Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010). The Washington courts have never held that such an insurer may be estopped from disputing the very legitimacy of the contract. To the contrary, the courts have consistently ruled that policyholders who render their contracts void by their own fraud may not pursue claims of bad faith against the insurer. *See Ki Sin Kim*, 223 P.3d at 1189 (citing, *inter alia*, *Mutual of Enumclaw Ins. Co. v. Cox*, 757 P.2d 499, 504 (Wash. 1988)).

The lone decision on which the Hellicksons rest their argument that a policyholder's fraud is not dispositive, *Ellis v. William Penn Life Assur. Co. of*

5

*Am.*, 873 P.2d 1185 (Wash. 1994), involved a life insurance policy, and misconduct by both the insurer and the applicant during the formation of the contract risked stranding a blameless beneficiary without recovery. As the Washington Court of Appeals has explained, *Ellis* represents a "limited exception" that "stands for the basic proposition that it would be unfair, in the context of replacement life insurance, to bar an innocent beneficiary from claiming the benefit of equitable estoppel when *both* the insurer and insured engaged in wrongful acts." *Wickswat v. Safeco Ins. Co.*, 904 P.2d 767, 776 (Wash. Ct. App. 1995). "The same fairness and policy considerations simply do not apply," the court explained, "where no third party beneficiary is involved." *Id.*

**AFFIRMED**.