[No. 8248-2-III. Division Three. June 16, 1987.]

GAIL A. BROWN, *as Administratrix, Appellant,* v. JACKSON NATIONAL LIFE INSURANCE COMPANY, ET AL, *Respondents.*

*William L. Reinig* and *Reinig & Kirk*, for appellant.

*Don W. Schussler* and *Gavin, Robinson, Kendrick, Redman & Pratt*, for respondents.

MUNSON, J.—Gail A. Brown, as beneficiary, seeks to enforce a life insurance policy purchased by her husband from Jackson National Life Insurance Company. The trial court granted summary judgment of dismissal; we affirm.

In October 1983, Marvin Brown applied for a life insurance policy from Jackson and named his wife, Gail, as the beneficiary. According to Mrs. Brown, Jackson's agent filled out the application very quickly and, rather than asking the questions singly, lumped them together and paraphrased them. One of the questions on the application asked whether the applicant had ever received treatment or joined any organization for alcoholism or drug abuse, to which the agent marked "no." Mrs. Brown does not remember being asked whether Mr. Brown had received treatment for alcoholism. She remembers the agent asking if he had ever been hurt, had surgery, or been sick in the hospital. In fact, Mr. Brown had been hospitalized for alcohol problems in 1978 and 1981. Mr. Brown signed the application, but did not read it. The Browns also did not read the policy or the attached application when it was later mailed to them.

According to Mrs. Brown, Mr. Brown did not have an alcohol problem between the time of his last visit to the

hospital in 1981 and when he applied for life insurance. He was in his early thirties, in good physical condition, ran every day, and was training for triathlons. He died on May 17, 1985, within the 2–year contestable period, from a combination of alcohol and heroin poisoning. Jackson refused to pay the benefits to Mrs. Brown, claiming her husband had misrepresented the fact he had twice been hospitalized for alcohol problems. Mrs. Brown contends the erroneous answer was due to the agent's cavalier attitude in conducting the interview. She notes one question relating to dizziness (an indication of heart or blood pressure problems) was not answered at all. The trial court granted summary judgment in favor of Jackson; Mrs. Brown appeals.

The sole issue is whether the trial court erred in granting the summary judgment of dismissal. Because a reviewing court must view the evidence in the light most favorable to the nonmoving party, *Sea–Pac Co. v. United Food & Comm'l Workers, Local 44,* 103 Wn.2d 800, 802, 699 P.2d 217 (1985), we must assume the agent did not ask Mr. Brown if he had been hospitalized due to alcoholism. Mrs. Brown essentially contends that even though her husband signed the application and subsequently received the policy with the application attached without discovering the false statement, she should not be denied recovery because of the agent's failure to ask about Mr. Brown's hospitalization for alcoholism. Jackson contends the fact Mr. Brown signed the application and certified his answers as correct precludes the court from going behind the application to determine his intent.[1]

---

[1]Jackson also contends Mr. Brown made the false statement with the intent to deceive and the false statement was material. First, viewing the evidence in the light most favorable to Mrs. Brown, it cannot be said the Browns intended to deceive Jackson or its agent. Jackson cites *Wilburn v. Pioneer Mut. Life Ins. Co.,* 8 Wn. App. 616, 620, 508 P.2d 632 (1973) for the proposition that when an insured knowingly makes a material false statement, it is presumed it was made with intent to deceive. There, the insured stated in his application his only consultation with a doctor during the last 5 years was for a routine Army physical examination. He also stated he had not been confined to a hospital in the last 5 years. In fact, the insured had been treated for hepatitis, pneumonia, and malaria and

RCW 48.18.090(2) provides:

> In any application for life or disability insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

█ RCW 48.18.090 was first interpreted in a life insurance context in *Hein v. Family Life Ins. Co.*, 60 Wn.2d 91, 376 P.2d 152 (1962). In *Hein,* the insured had a history of heart disease, but denied it in his application and subsequently died of heart disease. Responding to the beneficiary's contention the insured responded truthfully to the agent's questions, the court explained:

> We will assume that the insured answered all of the questions truthfully and in good faith; and that, as testified, the insured was given no opportunity to read the application before signing it. In short, we make all assumptions favorable to the good faith and honesty of the insured up to June 15, 1959, when he received his copy of the insurance policy with the photostatic copies of the application attached and made a part of the contract of insurance. He then had an opportunity to read the answers to the application to ascertain whether they had been correctly recorded. He not only had the opportunity to do this, but it was his duty so to do.

(Footnote omitted.) *Hein,* at 94. The court then concluded: "We are convinced that we should, particularly in life insurance cases, adhere to the rule that an insured, by accepting and retaining a policy with the application made a part thereof, thereby makes any false representations in

---

had spent 3 weeks in the hospital only 3½ months prior to the date of the application. There was no allegation the insured was not asked about his consultations with a doctor or his hospital confinement. Therefore, *Wilburn* is not applicable.

Second, the materiality of the false statement in Mr. Brown's application is not at issue. Although Mrs. Brown strenuously argued to the trial court that the policy would have been issued even had Jackson known about Mr. Brown's prior treatment for alcohol problems, she concedes this point on appeal.

the application his own." *Hein,* at 97.[2]

Mrs. Brown relies on several cases in support of her position that the holding in *Hein* has been weakened. In *Fox v. Bankers Life & Cas. Co.,* 61 Wn.2d 636, 638, 379 P.2d 724 (1963), the court stated that an insured cannot be denied recovery under an insurance policy where he fully and truthfully relates the facts to the agent, but the agent incorrectly fills out the application. The court concluded that because of the conflicting testimony as to what the insured told the agent, the case was properly submitted to the jury. *Fox,* at 639. However, *Fox* is distinguishable because there was nothing patently false in the application, *i.e.,* there was no question which specifically addressed back problems, the subject of the alleged misrepresentation. Thus, there was no ratification of any misrepresentation as there was in *Hein.* The court did not address whether the insured should have later discovered the false statement and, thus, did not mention *Hein.*

In *Olson v. Bankers Life Ins. Co.,* 63 Wn.2d 547, 388 P.2d 136 (1964), the insured fully disclosed his condition, but the agent wrote down false answers. When the prospective insured told the agent the answers were not correct, the agent said the false statements were not important. The court affirmed a jury verdict in favor of the insured, observing that under *Hein* an insured has a duty to examine his policy upon delivery and to report any false statements to the company, but that the insured had ful-

---

[2]Mrs. Brown contends *Hein* is unique and should not be followed because of the following statement:

We have disposed of this case on the basis of what we believe to be the application of sound principles of life insurance law. It is, however, *sui generis,* and could, and perhaps should, be disposed of on the basis that to permit the plaintiff to recover under the circumstances here existing would be an unjust enrichment of the plaintiff and a legalized mulcting of the insurance company. This case, by reason of its peculiar features, belongs in an eddy and not in the mainstream of judicial decision.

*Hein,* at 97–98. The court's acknowledgment that *Hein* is "not in the mainstream of judicial decision" refers only to the second basis for its decision, *i.e.,* unjust enrichment; it was not meant to limit application of its rule that an insured is bound by any false statements in the application.

filled that duty. The court reasoned:

> When an insurer's agent construes the materiality of questions in an application to the prospective insured by stating that certain information is immaterial or not required, any misrepresentations resulting therefrom are not chargeable to the applicant but to the insurer, for the reason that the agent is not the agent of the applicant but of the insurer.

*Olson,* at 551. *Olson* makes it clear that *Hein* applies only when the insured does not bring the false statements to the attention of the insurance company, as the facts here indicate.

In *Barber v. Bankers Life & Cas. Co.,* 81 Wn.2d 140, 500 P.2d 88 (1972), the application asked the insured whether he understood that the policy would not take effect until it was issued by the company and duly executed by the president and secretary. The agent wrote down "yes" and the insured signed the application. The insured died shortly thereafter; learning of the insured's death, the company refused to issue the policy. Like the present case, the insured's wife claimed the agent did not read that particular question to the insured. The court reversed the trial court's order of summary judgment in favor of the company and distinguished *Hein*:

> In the instant case, the application form was filled out by the agent and then placed before the applicant to sign. It was then taken by the agent. The application never again came into the possession of the applicant to provide him with time to read all the challenged portions. It is on this later possession with time and opportunity to read the document that this court bases its holdings that the applicant is responsible for knowing what is in the application. On this point, the present case is distinguishable.

*Barber,* at 144.

Finally, *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 586 P.2d 845 (1978) is distinguishable because there was no misstatement on the application. Thus, the insured could not have brought the false statement to the

attention of the insurance company.

The *Hein* rule is still valid: after receiving a policy with a copy of the signed application attached, the insured has a duty to examine it to ascertain whether the answers have been correctly recorded. If the insured discovers a false statement, he or she must bring it to the attention of the insurance company. If the insured does not do this, he or she ratifies the answers.[3] This is precisely what occurred in this case. The trial court properly granted summary judgment in favor of Jackson.

The judgment is affirmed.

THOMPSON, A.C.J., and GREEN, J., concur.

Review denied by Supreme Court October 6, 1987.

---

[3]*Accord, Williams v. Metropolitan Life Ins. Co.,* 10 Wn. App. 600, 605, 519 P.2d 1310, *review granted,* 83 Wn.2d 1011, *dismissed,* 108 Wn.2d 1029 (1974).