124 Wn.2d 1 (1994)
873 P.2d 1185
CHARLOTTE E. ELLIS, Petitioner,
v.
WILLIAM PENN LIFE ASSURANCE COMPANY OF AMERICA, ET AL, Respondents.
SUSAN B. STROTHER, Respondent,
v.
CAPITOL BANKERS LIFE INSURANCE COMPANY, Petitioner.
Nos. 59986-6; 60185-2.
The Supreme Court of Washington, En Banc.
May 26, 1994.
*3 Montgomery, Purdue, Blankinship & Austin, by Scott B. Easter and Tamara L. Roe, for petitioner Ellis.
Bogle & Gates and Ronald T. Schaps, for petitioner Capitol Bankers Life.
Williams, Kastner & Gibbs, by Mark S. Davidson and Rebekah R. Ross, for respondent William Penn Life.
Hallmark, Keating & Abbott, P.C., William E. Fitzharris, Jr., and Barney Jay Mason, for respondents Crowley.
Edwards, Sieh, Wiggins & Hathaway, P.S., by Malcolm L. Edwards; Inslee, Best, Doezie & Ryder, by Evan E. Inslee, for respondent Strother.
SMITH, J.
Petitioner Charlotte E. Ellis seeks discretionary review of an unpublished decision of the Court of Appeals, Division One, affirming an order of the King County Superior Court granting summary judgment to Respondent William Penn Life Assurance Company of America. This court granted review on March 31, 1993.
Petitioner Capitol Bankers Life Insurance Company seeks discretionary review of a published decision of the Court of Appeals, Division One, which reversed a jury verdict for Respondent Susan B. Strother and remanded for further proceedings in the King County Superior Court. Respondent Strother cross-petitioned for review. This court granted review on March 31, 1993.
The cases were consolidated for the hearing before this court. We reverse the Court of Appeals in each case and remand them for further proceedings.

STATEMENT OF FACTS

Ellis v. William Penn Life Assurance Company
Beginning in 1982, Dr. Leland R. Ellis, M.D., every two or three years purchased an annually renewable term insurance policy on his life. Each new policy purchased replaced a previously issued one. In 1986 Dr. Ellis' insurance broker, John W. Crowley, CLU, ChFC, wrote a $300,000 term life policy for the physician with Jackson National Life Insurance *4 Company. That policy contained a standard 2-year suicide incontestability provision, which provided that the insurer would not pay the face amount of the policy if the insured committed suicide within two years of the date of issue. Coverage commenced on April 1, 1986, and was renewed on April 1, 1987, for a 1-year term ending March 31, 1988. The insured, Dr. Ellis, did not renew the policy after that date.
On April 25, 1988, in consultation with Dr. Ellis, Mr. Crowley completed an application for a $400,000 term life insurance policy for the physician with William Penn Life Assurance Company of America (William Penn). As part of the application Mr. Crowley checked the "no" box for the question which asked whether the proposed insured had "any intention of replacing ... any life insurance ... policy in force in this or any other company."[1] Mr. Crowley later declared that, as part of the application process, he had informed Dr. Ellis that the suicide provision would apply during the first two years of coverage under the new policy. Subsequently, William Penn retained Equifax Services, Inc. (Equifax) to investigate the application.[2] The Equifax report dated May 4, 1988, shows an "x" in the "yes" box for the question "Does the current appl. replace an existing individual life insurance policy?"[3]
The resulting William Penn policy, showing an issue date of April 20, 1988,[4] contains a standard suicide clause and a 2-year contestability provision which read:
Suicide
If the insured dies by suicide within 2 years of the Date of Issue of this contract, the only death benefit will be the sum of premiums paid. The amount will be paid in a single sum....
Time Limit on Contests (Incontestability)
We cannot contest this contract after it has been in force, during the Insured's lifetime, for 2 years from the Date of Issue, except for failure to pay premiums.[[5]]
*5 On May 15, 1989, Dr. Ellis died an apparent suicide.[6] After his death, his widow, Petitioner Charlotte E. Ellis, submitted a claim as beneficiary under the policy, indicating her belief that the death was a suicide. After investigation, the insurer invoked the "suicide provision" and delivered to Ms. Ellis only an amount equivalent to the sum of premiums paid instead of the $400,000 face value of the policy.
On April 30, 1990, Ms. Ellis filed a complaint in the King County Superior Court against John M. Crowley, his marital community, J.W. Crowley, Inc., a licensed insurance brokerage in which Mr. Crowley was the sole shareholder, and William Penn. The complaint sought a declaration that William Penn (a) is estopped from denying coverage under the policy, (b) committed a breach of contract by refusing to pay the face value of the policy, and (c) breached a duty of good faith and fair dealing by refusing to pay the $400,000.
In addition, the complaint alleged that Mr. Crowley's negligent misrepresentations, failure to disclose material facts, and failure to abide by the insurance regulations in the Washington Administrative Code governing replacement life insurance policies resulted in Ms. Ellis losing the $400,000 death benefit on the policy. The complaint then alleged that both Mr. Crowley and William Penn violated Washington's Consumer Protection Act.[7]
Respondent William Penn then moved for dismissal under CR 12(b)(6) for failure to state a claim upon which relief could be granted. Petitioner Ellis followed with a motion for summary judgment. The court denied both motions. Afterward, Mr. Crowley, later joined by William Penn, moved for dismissal of Ms. Ellis' claims on summary judgment. On May 7, 1991, the King County Superior Court, the Honorable Liem E. Tuai, granted dismissal on summary judgment of all claims by Petitioner Ellis.
On May 15, 1991, Petitioner Ellis filed a notice of appeal of the judgment to the Court of Appeals, Division One. She *6 argued that William Penn should have known that Dr. Ellis intended to secure replacement insurance because it was indicated in the Equifax report. Such knowledge, she claimed, meant that (a) under WAC 284-23-455 William Penn had an obligation to notify Jackson National Life that Dr. Ellis intended to replace that company's policy and (b) under WAC 284-23-485 the insurer had a duty to supply the insured with a written comparison of policy features and a statement that the new policy might not provide coverage equivalent to that in the old policy. Petitioner Ellis contended that the company should be estopped to deny coverage because it had not complied with these regulatory provisions.
Noting that in a life insurance policy estoppel applies only to conditions and not to coverage, in its unpublished opinion filed November 23, 1992, the Court of Appeals reasoned that the suicide provision qualifies as a statement of coverage only and not as a condition. Accordingly, the court concluded that Petitioner Ellis' argument failed.[8]
In addition, Petitioner Ellis contended that the trial court should not have admitted Respondent Crowley's statement that he had advised Dr. Ellis about the applicability of the suicide provision in the William Penn policy. She argued the "dead person's statute"[9] bars Mr. Crowley's testimony because that testimony would be unfair to her. Noting that only an adverse party can make use of the statute, the Court *7 of Appeals decided that a beneficiary does not qualify as an adverse party and that Petitioner Ellis, as a beneficiary, could not avail herself of the statute.
Finally, as to Petitioner Ellis' negligence claim, the Court of Appeals looked to her declaration to determine whether she had raised a material fact on proximate cause. In it she contended that her husband had experienced periods of depression prior to applying for the William Penn policy. Accordingly, she claimed, he would not have purchased a policy containing a suicide clause. The Court of Appeals concluded that Petitioner Ellis had not provided any factual support for the statements and thus had not raised an issue of material fact as to proximate cause.
On December 22, 1992, Petitioner Ellis petitioned this court for discretionary review of the unpublished decision of the Court of Appeals, claiming that the court erred in failing to apply the estoppel theory; that there was sufficient circumstantial evidence to establish proximate cause on the negligence theory; and that the decision of the Court of Appeals in this case conflicts with its decision in Strother v. Capitol Bankers Life Ins. Co.,[10] the other case consolidated here.
Respondent William Penn contends that the Court of Appeals correctly determined that equitable estoppel does not apply in this case. Respondent Crowley argues that there is no conflict between Ellis and Strother because in both cases the court recognized the theoretical viability of a negligence claim based on a violation of WAC 284-23-400 through -485. He contends that in Strother the court remanded for determination of proximate cause, while in Ellis the court correctly determined that the evidence is not sufficient to raise the issue of proximate cause. Alternatively, Mr. Crowley argues that this court need not address a conflict between decisions from the same division of the Court of Appeals.

*8 Strother v. Capitol Bankers Life Insurance Company[11]
In 1983, Respondent Susan B. Strother's husband, Mark Strother, D.V.M., graduated as a veterinarian from Washington State University. At that time, he purchased a group policy with Mutual Life Insurance Company of New York (MONY) for a face value of $40,000 through agent Skip Carbon. In 1984 Dr. Strother purchased a veterinary clinic in Monroe, Washington from Dr. Thomas Van Meter. As a condition of the sale, Dr. Strother was required to maintain life insurance sufficient to cover his 10-year debt to Dr. Van Meter. Dr. Strother worked with an insurance consultant in Portland, Oregon who put him in contact with another MONY agent, Walter Steeves. Mr. Steeves arranged a $250,000 life insurance policy for Dr. Strother from MONY that became effective in September 1984.
The agent for Capitol Bankers Insurance Company (Capitol Bankers) was Donald Mason, who also arranged for Dr. Van Meter's insurance needs. He was a social acquaintance and business associate of Dr. Van Meter. Dr. Van Meter testified at trial that he had an arrangement with Mr. Mason under which Mr. Mason paid him a portion of commissions earned on the sale of insurance contracts to persons or entities referred to him by Dr. Van Meter. Mr. Mason testified at trial that approximately 85 percent of his business involves replacement insurance policies. Dr. Van Meter referred Dr. Strother to Mr. Mason in 1984. Mr. Mason was aware of the sale of the clinic and of the condition requiring purchase of insurance. He prepared a number of policy proposals for Dr. Strother, but the record does not indicate whether Dr. Strother was ever presented with them. Dr. Strother chose at that time to purchase the MONY life insurance policy and not the Capitol Bankers policy. The MONY policy insured him against, among other things, the risks of mountain climbing.
Approximately one year later, in September 1985, Mr. Mason again contacted Dr. Strother about life insurance. On September 17, 1985, Mr. Mason filled out an application for *9 a $250,000 life insurance policy which Dr. Strother signed that day. The trial judge, the Honorable Anthony P. Wartnik, determined that the application contained certain misrepresentations when it indicated (1) that Dr. Strother, an avid mountain climber, had not participated in mountain climbing within the last 3 years; (2) that the insurance policy was not intended to replace another; and (3) that Dr. Strother had a $40,000 policy with MONY, but did not disclose that he also had a $250,000 policy with MONY.
No replacement insurance notices were issued to Dr. Strother or MONY as required by regulations issued by the Washington Insurance Commissioner (WAC 284-23-400 through -485). Those insurance regulations require that, when replacement policy transactions are initiated, a written notice must be provided to applicants informing them of the consequences of replacing an existing life insurance policy. The regulations also require a replacing insurer to send notice to an existing insurer advising it of the proposed replacement. The existing insurer is then free to contact the applicant to caution against replacement. The Court of Appeals affirmed the determination by the jury that, for purposes of the insurance regulations and despite Dr. Strother's indication on the application that it was not a replacement policy, Mr. Mason knew or should have known that Dr. Strother intended to replace the existing MONY insurance policy with the Capitol Bankers policy.
On September 19, 1985, two days after Dr. Strother signed the application for the Capitol Bankers policy, he instructed his wife, Susan B. Strother, D.V.M. (Respondent), who followed his instruction, to stop payment on the last premium on the MONY policy which was scheduled for automatic withdrawal from their checking account that day. The $250,000 policy was issued by Capitol Bankers on November 21, 1985. It did not insure Dr. Strother against the risks of mountain climbing. On December 2, 1985, the approved Capitol Bankers policy was sent to Dr. Strother, with a copy of the application attached.
*10 On August 15, 1986, Dr. Mark Strother died in a mountain climbing accident at Mount Robson, British Columbia. Capitol Bankers refused to issue payment on the $250,000 life insurance policy, claiming that the application contained material misrepresentations which voided the policy. Dr. Susan B. Strother (Respondent Strother) filed suit against Donald Mason, Corporate Concepts, Inc., and Capitol Bankers Life Insurance Company, claiming that Capitol was precluded from voiding the policy because that would violate the public interest and the Consumer Protection Act. She argued that Capitol was precluded from that action under equitable estoppel. Respondent Strother also claimed breach of contract, negligent infliction of emotional distress, and negligence generally. The claim against Mr. Mason was dismissed without prejudice prior to trial.
After concluding that the incorrect answers on the application were material misrepresentations, the trial judge determined that the sole question for the jury was whether Donald Mason knew or should have known that the 1985 Capitol Bankers policy was intended as a replacement policy. The jury answered in the affirmative.
The trial court concluded that, as a matter of public policy, Capitol Bankers was precluded from voiding the insurance policy because of its failure to comply with notice requirements under the insurance regulations. The trial court also rejected Respondent Strother's claim under the Consumer Protection Act, concluding that no causal link had been established between an unfair trade practice and Respondent's injury and that Respondent was precluded from recovering because of Dr. Strother's attempt to perpetrate a fraud.
Capitol Bankers filed an appeal claiming that the trial court erred in applying a public policy theory to a breach of contract claim. Respondent Strother argued that the trial court had properly decided the public policy claim, but had erred in dismissing her Consumer Protection Act claim.
The Court of Appeals, Division One, affirmed the trial court's conclusion that, based upon the evidence, Mr. Mason *11 knew or should have known that the Capitol Bankers policy was intended to replace the MONY policy and that Capitol Bankers violated WAC 284-23-400 through -485. However, stating that persons who have committed fraud cannot claim equitable estoppel or assert a claim under the Consumer Protection Act, the court reversed the trial court's conclusion that Capitol Bankers was precluded on public policy grounds from voiding the insurance policy; but affirmed dismissal of the Consumer Protection Act claim. The Court of Appeals addressed a negligence theory not briefed by the parties. It concluded that Capitol Bankers had breached its duty to notify under insurance regulations, and remanded the case for further proceedings to determine proximate cause between the breach and the injury claimed by Respondent Strother.[12]
Capitol Bankers petitioned this court for discretionary review of the decision of the Court of Appeals, claiming that the court erred in remanding for further proceedings on the theory of negligence which had not been briefed by either party. Respondent Strother filed a response and cross petition for review, arguing that review should not be granted. In the alternative, Respondent Strother asked this court to reverse the decision of the Court of Appeals and reinstate the decision of the trial court on the public policy claim.

QUESTION PRESENTED
The common question presented by these two cases is whether a violation by an insurance company of notice requirements for replacement life insurance policies under regulations issued by the Insurance Commissioner and published in the Washington Administrative Code subjects it to liability for the face value of a replaced policy, notwithstanding misrepresentations by the insured in the policy application.

*12 DISCUSSION
The practice of "twisting"[13] in insurance transactions is prohibited under RCW 48.30.180 which provides:
No person shall by misrepresentations or by misleading comparisons, induce or tend to induce any insured to lapse, terminate, forfeit, surrender, retain, or convert any insurance policy.
WAC 284-23-400 through -460 establish the purpose of the regulations and the duties of insurers and their agents and brokers.
WAC 284-23-400 provides in relevant part:
The purpose of this regulation is:
....
(2) To protect the interests of life insurance . .. purchasers by establishing minimum standards of conduct to be observed in replacement transactions by:
(a) Assuring that the purchaser receives information with which a decision can be made in his or her own best interest;
....
WAC 284-23-440 provides in relevant part:
(1) Each agent or broker who initiates the [insurance policy] application shall submit to the insurer to which an application for life insurance or annuity is presented, with or as part of each application:
(a) A statement signed by the applicant as to whether replacement of existing life insurance or annuity is involved in the transaction; and
(b) A signed statement as to whether the agent or broker knows replacement is or may be involved in the transaction.
(2) Where a replacement is involved, the agent or broker shall:
(a) Present to the applicant, not later than at the time of taking the application, a completed notice regarding replacement in the form as described in WAC 284-23-485....
(Italics ours.)
*13 In addition, WAC 284-23-455 provides in relevant part:
Each insurer that uses an agent or broker in a life insurance or annuity sale shall:
(1) Require with or as part of each completed application for life insurance or annuity, a statement signed by the agent or broker as to whether he or she knows replacement is or may be involved in the transaction.
(2) Where replacement is involved:
(a) Require from the agent or broker with the application for life insurance or annuity (i) a list of all of the applicant's existing life insurance or annuities to be replaced and (ii) a copy of the replacement notice provided the applicant pursuant to WAC 284-23-400 (2)(a)....
(b) Send to each existing insurer a written communication advising of the replacement or proposed replacement ... and a policy summary ... on the proposed life insurance....
(c) Each existing insurer or such insurer's agent .. . that [attempts to dissuade a policyowner from replacing an existing policy] shall ... furnish the policyholder with a policy summary for the existing life insurance....
WAC 284-23-480 provides in relevant part:
(1) Any broker, and any insurer, agent ... of such insurer failing to comply with the requirements of this regulation shall be subject to such penalties as may be appropriate under the insurance laws of Washington.
....
(3) Policyowners have the right to replace existing life insurance after indicating in or as part of the applications for life insurance that such is not their intention; however, patterns of such action by policyholders who purchase the replacing policies from the same agent or broker shall be deemed prima facie evidence of the licensee's knowledge that replacement was intended in connection with the sale of those policies, and such patterns of action shall be deemed prima facie evidence of the licensee's intent to violate this regulation.

(Italics ours.)
In both of these cases the transactions involved replacement of life insurance policies. In Strother the trial court and the Court of Appeals determined that the evidence supported a conclusion that Donald Mason, the insurance agent, "knew or should have known" that the transaction with Dr. Mark Strother involved replacement of life insurance. In Ellis the evidence shows that a pattern of replacement insurance existed between Respondent John W. Crowley, the *14 insurance agent, and Dr. Leland Ellis. Further, Respondent Crowley's testimony that he verbally informed Dr. Ellis of the differences between the old and new policies establishes that Mr. Crowley "knew or should have known" that replacement insurance was involved in the transaction. The Equifax report prepared for Respondent William Penn indicates that the insurer "knew or should have known" that the transaction involved replacement of life insurance.
In both cases the agents were required under insurance regulations to provide written notice to the insured advising of the consequences of replacing an existing insurance policy because replacement insurance was involved, and the replacing insurers were obligated to require their agents to comply with those regulations. In addition, in both cases the insurers were required to notify the previous insurers of the proposed replacements in order to give them an opportunity to advise the purchasers of the consequences of replacing existing insurance. In both cases the agents and the replacing insurers did not comply with the regulations.

Estoppel
Both Petitioner Ellis and Respondent Strother argue that the failure of the insurance companies and their agents to comply with insurance regulations means that the replacing insurers should be estopped from refusing to pay the face value of the policies. The insurance companies and agents contend that misrepresentations by the insureds bar application of an estoppel theory, citing as authority Hein v. Family Life Ins. Co.[14] and Mutual of Enumclaw Ins. Co. v. Cox.[15] Both of those cases involved misrepresentations only by the insured parties, and in neither case did the insurer commit any wrongful act. The estoppel issue in those cases is distinguishable from that in these cases, where wrongful acts were committed by both the insureds and the insurers, and the wrongful acts committed by the insurers are clearly in violation of insurance regulations.[16]
*15 [1] A party asserting equitable estoppel "must establish by clear, cogent, and convincing evidence (1) an admission, statement, or act inconsistent with a claim afterward asserted, (2) an act by that party in reasonable reliance on the admission, statement, or act of another, and (3) injury to the relying party if the court allows the first party to contradict or repudiate the earlier admission, statement, or act.... Estoppel focuses on the justified reliance of the party asserting it, ... but in order to create an estoppel, it is necessary that the party claiming to have been influenced by the conduct, silence or declarations of another either lacked knowledge of the true facts or could not acquire them."[17]
All parties concede that no Washington case has addressed violations of these insurance regulations which seek to protect the public from the practice of "twisting". The United States Supreme Court in Bateman Eichler, Hill Richards, Inc. v. Berner,[18] a case involving violation of securities laws, modified the rule that only an innocent party may seek estoppel. Under a two-prong test, the court allowed a plaintiff with "unclean hands" to bring an action in estoppel against another wrongdoer, but specified that the action must promote effective enforcement of the securities laws and protection of the investing public and that the plaintiff must not bear "substantially equal responsibility for the violations [causing harm to the investing public, which] he [sought] to redress".[19]
[2] Two New York cases, Tannenbaum v. Provident Mut. Life Ins. Co.[20] and Trainor v. John Hancock Mut. Life Ins. *16 Co.,[21] apply similar reasoning on estoppel to further the public policy goal relating to replacement of life insurance policies: protection of beneficiaries.[22] In Tannenbaum and Trainor, as in Ellis and Strother, the insureds falsely or incorrectly indicated on their applications that the transactions did not involve replacement of life insurance. In both New York cases the insureds did not disclose preexisting medical conditions on their applications. In Tannenbaum the insured did not mention an earlier hospitalization for acute paranoid psychosis. In Trainor the insured did not disclose hospitalization for alcoholic hepatitis and cirrhosis of the liver. Additionally, in Tannenbaum and Trainor, as in Ellis and Strother, the replacing insurer knew or was imputed with knowledge that the insured intended to replace existing life insurance. Under the insurance laws of New York, as under the insurance laws in this state,[23] the insurer is required to take affirmative steps to enable the insured to make a rational decision whether to purchase replacement insurance.
In Trainor the court in effect applied the two-part test later articulated by the United States Supreme Court in Bateman Eichler to effectuate the public policy ends of the insurance laws of New York. In Trainor the court regarded noncompliance with insurance regulations a violation of public policy.[24] Similarly, in Bateman Eichler the court considered noncompliance with securities laws a violation of public policy. In Trainor the misrepresentations of the insured contributed in an equal degree to the violation of the *17 insurance regulation by the insurer for which the beneficiary sought redress.
The plaintiff in Trainor was of equal fault with the insurer. She did not satisfy the second prong of the Bateman Eichler test. The Trainor court, however, did not deny her a remedy. It stated that "[n]either the concerns of equity nor public policy dictate such a result in this case."[25] The court recognized "an alternate remedy which would return the parties to their original position prior to their misconduct."[26] It held the replacement insurer liable for the face value of the replaced policy.
In Tannenbaum the court recognized a similar violation of public policy. It found noncompliance with the insurance laws by the insurer, coupled with misrepresentations by its agent to induce purchase of the replacement policy, so egregious that it outweighed any fault of the insured. In effect, the insured satisfied the test later articulated in Bateman Eichler: the parties were not equally at fault. The court in Tannenbaum then applied the appropriate remedy and estopped the insurer from denying liability for the face value of the replacement policy.
[3] Application of the test relied on in Tannenbaum, Trainor and Bateman Eichler provides a basis for resolution of the two cases before this court. In both Ellis and Strother the plaintiffs satisfied the public policy prong of the Bateman Eichler test. However, only the facts in Ellis approximate those in Tannenbaum: the conduct of the insurer was more egregious than that of the insured in causing harm to the interests of the beneficiary.
In Ellis, Petitioner Charlotte E. Ellis, under the Tannenbaum reasoning, is entitled to an order estopping the insurer, William Penn Life Assurance Company, from denying liability for the $400,000 face value of the replacement policy.
In Strother, the replacement insurer, Capitol Bankers Life Insurance Company, would not have issued the replacement *18 policy but for the fact that the insured, Dr. Mark Strother, did not disclose his mountain climbing activities. His behavior, similar to that of the insured in Trainor, contributed harm to Respondent Strother's interests as beneficiary of the insurance policy in equal measure to the behavior of the insurer. Consequently, the appropriate remedy under Trainor is to restore the parties to their status prior to the offending behavior: making the replacement insurer, Capitol Bankers Life Insurance Company, liable for the $250,000 face value of the replaced MONY policy.

Negligence
In addition to their estoppel claims, Petitioner Ellis and Respondent Strother assert that the insurance companies are liable for the face value of the policies under a theory of negligence. In Strother, Respondent claimed negligence in her complaint. The issue was not briefed by either party. We need not address the negligence issue in this case. Our decision rests upon the conclusion that the doctrine of equitable estoppel applies against the insurers in these cases.

CONCLUSION
We reverse the Court of Appeals and the trial court in Ellis and remand to the trial court for further proceedings. Petitioner Charlotte E. Ellis is entitled to an order estopping the insurer, William Penn Life Assurance Company, from denying liability for the $400,000 face value of the replacement policy.
We reverse the Court of Appeals and remand to the trial court in Strother for further proceedings. Capitol Bankers Life Insurance Company is liable to Respondent Susan B. Strother for the $250,000 face value of the replaced MONY policy.
ANDERSEN, C.J., and UTTER, DOLLIVER, and JOHNSON, JJ., concur. MADSEN, J. (dissenting)
I respectfully dissent. In an effort to protect beneficiaries and to give effect to this state's *19 "twisting" regulations, the majority undermines this state's law of estoppel and its public policy regarding misrepresentations. In this process, it rewrites the insurance policies at issue to provide coverage where none exists. To achieve this result, the majority relies on two New York cases which have heretofore been followed almost exclusively by only the New York courts. See Tannenbaum v. Provident Mut. Life Ins. Co., 41 N.Y.2d 1087, 364 N.E.2d 1122, 396 N.Y.S.2d 351 (1977); Trainor v. John Hancock Mut. Life Ins. Co., 54 N.Y.2d 213, 429 N.E.2d 739 (1981).
I recognize the importance of this state's prohibition of twisting practices in insurance transactions, as set forth in RCW 48.30.180, and of the protection from such practices provided in WAC 284-23-400 through -485. If the court were confronted with a situation where the insurers failed to comply with the replacement provisions through no fault of the insureds, it might be appropriate to permit the innocent insureds to assert estoppel given the importance of providing consumers with complete information regarding the consequences of replacing life insurance. However, the court is not here presented with such a situation. In both cases, the insureds made misrepresentations and this contributed to the insurers' failure to comply with the replacement regulations.
Despite this court's longstanding adherence to the principles that equitable estoppel is not favored and is available only to blameless parties, the majority applies estoppel here, apparently because of the importance of the replacement regulations. As my dissent illustrates, other remedies are available to insured parties with unclean hands in the face of an agent's violation of these regulations. An insured can sue an insurer for negligence or for violation of the Consumer Protection Act, as the Court of Appeals' opinion in Strother v. Capitol Bankers Life Ins. Co., 68 Wn. App. 224, 842 P.2d 504 (1992), review granted, 121 Wn.2d 1008 (1993) illustrates. Both remedies recognize the importance of the replacement regulations without doing damage to existing Washington law.
*20 The majority here engages in twisting of its own by allowing beneficiaries of two "less than innocent" parties to assert estoppel. While I recognize the public policy in favor of enforcing the replacement regulations, I agree with the dissent in Tannenbaum that "one of the most basic of all public policies is the policy against permitting ... persons from profiting from their own wrong.... [E]stoppel ... should not be invoked to enforce a fraud". Tannenbaum, at 1090 (Jasen, J., dissenting).
Without discussing this important competing policy concern, the majority adopts the Tannenbaum and Trainor holdings and concludes that both insurers are estopped from denying nonexistent coverage with scarcely a mention of Washington's long-held doctrine that only a party with "clean hands" may assert estoppel. See Kirk v. Moe, 114 Wn.2d 550, 557, 789 P.2d 84 (1990); Mutual of Enumclaw Ins. Co. v. Cox, 110 Wn.2d 643, 650, 757 P.2d 499 (1988); Puget Sound Bank v. Richardson, 54 Wn. App. 295, 297, 773 P.2d 429 (1989); Ward v. Richards & Rossano, Inc., 51 Wn. App. 423, 434, 754 P.2d 120, review denied, 111 Wn.2d 1019 (1988); In re Estate of McKiddy, 47 Wn. App. 774, 780, 737 P.2d 317 (1987); Atlas Bldg. Supply Co. v. First Indep. Bank, 15 Wn. App. 367, 373, 550 P.2d 26 (1976); Christman v. General Constr. Co., 2 Wn. App. 364, 365, 467 P.2d 867, review denied, 78 Wn.2d 994 (1970).
A prominent insurance law treatise elaborates on this principle: "`[E]stoppel' involves a preclusion from asserting rights which otherwise might have existed, through an innocent and deleterious change of position of an innocent party in reliance on misleading representations or conduct of the party estopped". 16B John A. Appleman & Jean Appleman, Insurance § 9081, at 499 (1981).
Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence. Robinson v. Seattle, 119 Wn.2d 34, 82, 830 P.2d 318, cert. denied, 113 S.Ct. 676 (1992); Mercer v. State, 48 Wn. App. 496, 500, 739 P.2d 703, review denied, 108 Wn.2d 1037 (1987). Instead of holding estoppel in disfavor, *21 the majority applies it despite the failure of either insured to satisfy its elements. The majority allows the beneficiaries here to assert estoppel despite its recognition that "[e]stoppel focuses on the justified reliance of the party asserting it, ... but in order to create an estoppel, it is necessary that the party claiming to have been influenced ... lacked knowledge of the true facts ...". Majority, at 15.
Washington law has long held that after receiving a policy with a copy of the signed application attached, the insured has a duty to examine it to ascertain whether the answers have been correctly recorded. Hein v. Family Life Ins. Co., 60 Wn.2d 91, 96-97, 376 P.2d 152 (1962), cited in Lundmark v. Mutual of Omaha Ins. Co., 80 Wn.2d 804, 807, 498 P.2d 867 (1972); Williams v. Metropolitan Life Ins. Co., 10 Wn. App. 600, 605, 519 P.2d 1310 (1974); Brown v. Jackson Nat'l Life Ins. Co., 48 Wn. App. 268, 274, 738 P.2d 701, review denied, 109 Wn.2d 1004 (1987); Strother, at 230. If the insured discovers a false statement, he or she must bring it to the attention of the insurance company. If the insured does not do this, he or she ratifies the answers. Hein, at 97; Brown, at 274. Here, both insureds received policies with copies of their signed applications attached, and neither informed their insurers about the false answers contained therein.
The requirements of estoppel are particularly interesting in light of the facts in Ellis. The record in Ellis includes insurance agent Crowley's declaration that he informed Dr. Ellis that all contestability provisions in the William Penn policy, including the suicide exclusion, would be in effect for 2 years. Also part of the record is Mrs. Ellis' declaration that her husband had experienced depression and "was a physician who dealt with depression in his patients and was knowledgeable about the possible consequences of the condition. He also expressed to me in a discussion about an acquaintance, that being depressed was not just the blues but meant that the person was contemplating suicide". Clerk's Papers, at 315-16.
Thus, the record shows that the insured was a physician who had experienced depression, understood that depression *22 could lead to suicide, and was told that the suicide exclusion in his new life insurance policy would be in effect for 2 years. Despite Mr. Crowley's apparent shortcomings in complying with the applicable insurance regulations, it does not appear that Dr. Ellis lacked knowledge of the true facts or justifiably relied on a belief that the William Penn policy covered early suicides.
Stated another way, parties seeking to invoke equitable estoppel must, at a minimum, make a showing of blamelessness or reasonable conduct under the circumstances or they are without standing to assert estoppel as a defense. Stohr v. Randle, 81 Wn.2d 881, 885, 505 P.2d 1281 (1973), cited in Richardson, 54 Wn. App. at 297. Here, Dr. Ellis' conduct was neither blameless nor reasonable. His insurance application stated that he was not seeking replacement insurance, even though the record demonstrates clearly that this was his purpose. Mrs. Ellis described the couple's practice of replacing life insurance policies in her declaration: "Being careful consumers, we generally replaced each term policy after two or three years in order to take advantage of the lower premiums offered in the beginning of the term, whether or not we intended to increase the coverage". Clerk's Papers, at 314. Moreover, the majority writes that "Respondent Crowley's testimony that he verbally informed Dr. Ellis of the differences between the old and new policies establishes that Mr. Crowley `knew or should have known' that replacement insurance was involved in the transaction". Majority, at 14. The same conversation should have led Dr. Ellis, presumably a person of some intelligence, to a similar understanding. Accordingly, he was neither blameless in stating in his insurance application that his new policy was not replacement insurance nor reasonable, given the facts cited earlier, in applying for and accepting insurance with a suicide exclusion.
In allowing Mrs. Ellis recovery under the William Penn policy despite this exclusion, the majority also overlooks Washington law stating that estoppel cannot be invoked to create liability for risks not covered by a contract. Saunders *23 v. Lloyd's of London, 113 Wn.2d 330, 335-36, 779 P.2d 249 (1989); Carew, Shaw & Bernasconi v. General Cas. Co. of Am., 189 Wash. 329, 336, 65 P.2d 689 (1937). Suicide clearly is a risk of loss under a life insurance contract. 1B John A. Appleman & Jean Appleman, Insurance § 499, at 381 (1981); Buist M. Anderson, Life Insurance § 17.4, at 502 (1991). Statutes in force in most states, including Washington, permit an insurer to exclude from the risks assumed under a life insurance policy suicide committed within the first 1 or 2 policy years, but these statutes also require that suicide committed after this short period be fully covered. Life Insurance § 17.4, at 503; see RCW 48.23.260. This temporary exclusion is an attempt to limit insurance costs:
Obviously, if the insurer is required to and does pay in full for early suicides, these claims must be reflected in the cost of life insurance to all. No mortal underwriter is able to sort out and to decline all those applicants who intend to commit suicide shortly after receiving their policies. However, underwriting experience over the years has shown that those who intend to commit suicide will, in few instances, wait so long as one or two years to carry out this intent. Hence, the practice has developed of providing in a life insurance policy for a reduced benefit (usually the policy "reserve" or the premiums paid, but in some cases a percentage of the face amount) in the event the insured does commit suicide within the first year or so.
Life Insurance § 17.4, at 502-03. Thus, the 2-year suicide exclusion in the William Penn policy was a risk of loss borne by the insured, Dr. Ellis. Estoppel cannot now operate to bring this excluded risk within the coverage of the policy. See Alverson v. Minnesota Mut. Life Ins. Co., 287 S.C. 432, 434, 339 S.E.2d 140 (Ct. App. 1985); McCoy v. Northwestern Mut. Relief Ass'n, 92 Wis. 577, 585, 66 N.W. 697 (1896). The majority allows a party who misrepresented that a new policy was replacement insurance to rely solely on the insurer's resulting failure to comply with replacement regulations as grounds for rewriting an insurance policy to cover a risk of loss that the party knew was excluded. This result cannot stand.
The majority's application of estoppel is even more surprising in light of the facts in Strother. In Strother, the *24 insured's misrepresentations on his insurance application were blatantly fraudulent: Dr. Strother stated that he had not participated in mountain climbing in the past 3 years despite the fact that "[m]ountain climbing was his life". See Answer to Pet. for Review, at 2. It also stated that the Capitol insurance was not intended to be a replacement policy, even though Dr. Strother then had a $250,000 policy with MONY that he canceled after signing the Capitol application. The application also indicated only that Dr. Strother had a $40,000 policy with MONY and did not disclose the $250,000 policy. The resulting Capitol policy did not insure Dr. Strother for the risks of mountain climbing.
The majority now contends that such coverage effectively exists, however, because Capitol did not comply with the replacement regulations. It thus allows Dr. Strother's beneficiary to estop Capitol from denying coverage despite Dr. Strother's misrepresentations.
Estoppel is an equitable doctrine, and one cannot base a claim for an estoppel on acts induced by his own acts, especially on those induced by his own fraud or false representations. Pennsylvania Cas. Co. v. Simopoulos, 235 Va. 460, 465, 369 S.E.2d 166 (1988). In Simopoulos, the insured wrongfully procured insurance by his false answers to application questions, and thus could not estop the insurer from relying on these misrepresentations to deny coverage because of insurer error. Simopoulos, at 464. "Because Simopoulos had unclean hands, he had no standing in equity to interpose a plea of estoppel." Simopoulos, at 465. The Nebraska Supreme Court reached a similar conclusion in Chappelear v. Grange & Farmers Ins. Co., 190 Neb. 589, 592, 210 N.W.2d 921 (1973) (quoting In re Sanitary & Imp. Dist. 75, 182 Neb. 63, 72, 152 N.W.2d 111 (1967): "`A party may not properly base a claim of estoppel in his favor on his own wrongful act or dereliction of duty, or fraud committed or participated in by him, or on acts or omissions induced by his own conduct, concealment, or representations.'"). Here, Dr. Strother's fraudulent statements that he had not climbed mountains in the past 3 years and that the Capitol *25 insurance was not replacement insurance certainly contributed to the lack of coverage for the activity that killed him.
Whether he perpetrated these fraudulent statements or not, Dr. Strother is bound by the material misrepresentations made in his insurance application, as are his beneficiaries. Given his deception about his mountain climbing activities, his beneficiaries cannot now complain about an insurance policy that provides no coverage for death resulting from mountain climbing. To hold that Capitol is estopped from even mentioning Dr. Strother's misrepresentations cannot stand; to uphold such an application of equitable estoppel is to pervert the purposes of the doctrine. I would hold that neither Dr. Ellis nor Dr. Strother possessed the clean hands needed to allow their beneficiaries to assert the defense of estoppel in this case.
My resolution does not leave these beneficiaries without a remedy, however. Had the insureds appealed the dismissals of their Consumer Protection Act claims, the act would be one possible source of recovery. See Strother, at 240-45. However, both insureds did appeal and request review of their negligence claims. In Ellis, the Court of Appeals dismissed Mrs. Ellis' negligence claim because she had failed to raise a material issue of fact regarding the proximate cause element of her negligence theory. The court found her declaration insufficient to support a negligence claim in part because "[t]here was never any specific discussion of the suicide exclusion or of his [Dr. Ellis'] reaction to it". Charlotte E. Ellis v. William Penn Life Assur. Co. of Am. d.b.a. William Penn Life Ins. Co. of New York & John W. Crowley & Jane Doe Crowley, J.W. Crowley Inc., Court of Appeals cause 28451-7-I (Dec. 22, 1992). Since Mrs. Ellis' claim is based on the absence of proper notification concerning the suicide exclusion, it is not surprising that her declaration contains no reference to a specific discussion of the exclusion. I would hold Mrs. Ellis' declaration sufficient to raise an issue of fact regarding proximate cause and remand this case to the trier of fact for a consideration of her negligence claim.
*26 In Strother, the Court of Appeals remanded for a determination of proximate cause by the trier of fact. See Strother, at 246. In each of these cases I would remand and let a jury determine whether proximate cause exists and whether the insurers' negligence was mitigated by the acts of the insureds in this case. The errors made by the insurers in this case can be amply addressed under a negligence theory and negligence gives the Plaintiffs in this case a potential remedy without throwing the law of this state into disarray.
BRACHTENBACH and GUY, JJ., concur with MADSEN, J.
Reconsideration denied at November 8, 1994.
NOTES
[1] Clerk's Papers, at 13.
[2] Clerk's Papers, at 423.
[3] Clerk's Papers, at 16.
[4] Clerk's Papers, at 19.
[5] Clerk's Papers, at 26.
[6] Clerk's Papers, at 8.
[7] RCW 19.86.010-.920.
[8] Ellis v. William Penn Life Ins. Co. of Am., unpublished opinion noted at 67 Wn. App. 1048 (1992), slip op. at 5-6.
[9] "RCW 5.60.030 Not excluded on grounds of interest  Exception  Transaction with person since deceased. No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: PROVIDED, HOWEVER, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, ... then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased ... person ...: PROVIDED FURTHER, That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."
[10] 68 Wn. App. 224, 842 P.2d 504 (1992).
[11] 68 Wn. App. 224, 842 P.2d 504 (1992).
[12] Strother v. Capitol Bankers Life Ins. Co., 68 Wn. App. 224, 245-46, 842 P.2d 504 (1992).
[13] The Court of Appeals in Strother, at 232, explains "twisting" regulations:

"The purpose of the Washington Administrative Code provisions [WAC 284-23-400 through -485] governing the sale of replacement life insurance policies, sometimes referred to as the `twisting' regulations, is to protect the holder of an insurance policy from making an unwise choice in canceling an existing policy and buying a new policy. A decision to replace an existing policy may be good or bad depending on the facts. The evil to be avoided is an unwise cancellation....".
[14] 60 Wn.2d 91, 376 P.2d 152 (1962).
[15] 110 Wn.2d 643, 757 P.2d 499 (1988).
[16] See WAC 284-23-480(3).
[17] Howard v. Dimaggio, 70 Wn. App. 734, 739-40, 855 P.2d 335 (1993) (citing Robinson v. Seattle, 119 Wn.2d 34, 82, 830 P.2d 318, cert. denied, 506 U.S. 1028, 121 L.Ed.2d 598, 113 S.Ct. 676 (1992); Farnam v. CRISTA Ministries, 116 Wn.2d 659, 679, 807 P.2d 830 (1991); Leonard v. Washington Employers, Inc., 77 Wn.2d 271, 461 P.2d 538 (1969); McDaniels v. Carlson, 108 Wn.2d 299, 308, 738 P.2d 254 (1987); PUD 1 v. WPPSS, 104 Wn.2d 353, 365, 705 P.2d 1195, 713 P.2d 1109 (1985)). See also Colonial Imports, Inc. v. Carlton Northwest, Inc., 121 Wn.2d 726, 734-36, 853 P.2d 913 (1993).
[18] 472 U.S. 299, 86 L.Ed.2d 215, 105 S.Ct. 2622 (1985).
[19] Bateman Eichler, at 310-11.
[20] 53 A.D.2d 86, 386 N.Y.S.2d 409 (1976), affd, 41 N.Y.2d 1087, 364 N.E.2d 1122, 396 N.Y.S.2d 351 (1977).
[21] 54 N.Y.2d 213, 429 N.E.2d 759 (1981).
[22] See WAC 284-23-400(2)(a) (a decision in the best interest of the purchaser of life insurance would seem logically to apply to the interests of beneficiaries who survive the purchaser).
[23] "WAC 284-23-400 Purpose. The purpose of this regulation is:

"....
"(2) To protect the interests of life insurance ... purchasers by establishing minimum standards of conduct to be observed in replacement transactions by:
"(a) Assuring that the purchaser receives information with which a decision can be made in his or her best interest;"
[24] Trainor, at 217.
[25] Trainor, at 219.
[26] Trainor, at 219.